884 So.2d 623 (2004)
BIZCAPITAL BUSINESS & INDUSTRIAL DEVELOPMENT CORP.
v.
UNION PLANTERS CORP. d/b/a Union Planters Bank, Hibernia National Bank and the Business Bank of Baton Rouge.
No. 2003-CA-2208.
Court of Appeal of Louisiana, Fourth Circuit.
September 8, 2004.
Richard C. Stanley, Thomas M. Flanagan, Jennifer L. Thornton, Stanley, Flanagan *624 & Reuter, L.L.C., New Orleans, LA, for Plaintiff/Appellant, Bizcapital Business & Industrial Development Corporation.
James R. Lackie, Kean, Miller, Hawthorne, D'armond, McCowan & Jarman, L.L.P., Baton Rouge, LA, for Defendant/Appellee, Union Planters Bank.
Christina B. Peck, Roedel, Parsons, Koch, Blache, Balhoff & McCollister, Baton Rouge, LA, for Defendant/Appellee, The Business Bank of Baton Rouge.
Patrick Johnson, Jr., Brent C. Wyatt, Lemle & Kelleher, L.L.P., New Orleans, LA, for Defendant/Appellee, Hibernia National Bank.
(Court composed of Judge DAVID S. GORBATY, Judge LEON A. CANNIZZARO JR., Judge ROLAND L. BELSOME).
ROLAND L. BELSOME, Judge.
BizCapital Business & Industrial Development Corporation ("BizCapital"), and Hibernia National Bank ("Hibernia") appeal the judgment of the district court, which granted exceptions of no cause of action, filed by Union Planters Bank ("Union Planters") and Business Bank of Baton Rouge ("Business Bank"), and dismissed with prejudice the claims of BizCapital and the cross-claims of Hibernia. BizCapital also appeals the district court's denial of BizCapital's Motion for New Trial for the single purpose of amending its petition to explicitly state that Union Planters and Business Bank were liable for fraud.

PROCEDURAL HISTORY
On May 12, 2003, the district court issued a Judgment granting the exceptions of no cause of action filed by defendants/appellees, Union Planters and Business Bank, dismissing with prejudice the claims of BizCapital and the cross-claims of Hibernia against Union Planters and Business Bank.
In the district court's Reasons for Judgment, the court concluded that no cause of action existed because there was no fiduciary relationship between the parties. The court relied on La. R.S. 6:1124 and specifically stated:
La. R.S. 6:1124 provides that no financial institution or its officers or employees shall have a fiduciary obligation to its customers or any third party unless there is a written agreement setting forth the same. There is no agreement by or between those parties; therefore there is no cause of action.
On October 30, 2003, the district court, without assigning reasons, denied BizCapital's Motion for New Trial for the single purpose of amending its petition to explicitly state that the defendants were liable for fraud.

FACTS
BizCapital initiated this action against Union Planters, Business Bank, and Hibernia to recover damages claimed by BizCapital resulting from a $6 million loan ("Loan") to Media Direct. Hibernia filed a reconventional demand against BizCapital and cross-claims against Union Planters and Business Bank to recover damages claimed by Hibernia resulting from the Loan. Hibernia incorporated into its Cross-Claims against Union Planters and Business Bank all the allegations set forth in BizCapital's Petition against Business Bank and Union Planters.
In its First Amended and Restated Petition, BizCapital alleges the following claims for negligent misrepresentation and detrimental reliance against Union Planters and Business Bank:
I. Union Planters had and/or assumed, and then breached a legal duty to deal in good faith with BizCapital, to avoid misrepresenting material facts to *625 BizCapital, and to avoid omitting material facts to BizCapital.
II. Union Planters misrepresented to BizCapital the reason it sought a pay-off of the Media Direct loan, and it omitted to tell BizCapital about the $4 million overdraft and the suspiciously high volume of monetary transactions occurring in Media Direct's account.
III. BizCapital reasonably relied upon Union Planters material misrepresentations.
IV. BizCapital suffered losses as a result.
V. BizCapital relied to its detriment upon the information it received from Union Planters about the Media Direct loan.
VI. Business Bank misrepresented material facts to Hibernia in an agency capacity for BizCapital.
VII. Business Bank knew or should have know that its confirmation of possession of the alleged $2.9 million check would imply to Hibernia that the check would be deposited at the bank and/or wired to another financial institution.
VIII. BizCapital, which learned of the Business Bank's confirmation of possession of the alleged check through Hibernia, reasonably relied upon that confirmation, and BizCapital suffered damages as a result.
IX. Business Bank knew or should have known of the likelihood that it had mislead Hibernia (and through it, BizCapital), and that Media Direct was using Business Bank to mislead Hibernia and BizCapital.

ANALYSIS
The issues for review by this Court are whether the district court legally erred by granting the exception of no cause of action filed by Union Planters and Business Bank and dismissing with prejudice the claims of BizCapital and the cross-claims of Hibernia and whether the district court further committed error when it denied BizCapital the right to amend its petition to allege fraud specifically.
This Court's standard of review is de novo. Thus, no deference is due to the district court's legal conclusions and this Court uses the same test applicable in the district court. This Court stated in Wirthman-Tag Constr. Co. v. Hotard, 00-2298, 00-2299, p. 5 (La.App. 4th Cir.12/19/01), 804 So.2d 856, 860, the following:
The purpose of the exception of no cause of action is to determine the legal sufficiency of the plaintiff's petition. Generally, the exception is tried on the face of the petition and no evidence may be introduced to support or controvert the objection that the petition fails to state a cause of action. La. C.C.P. art. 927(A)(4), 931; Reis v. Fenasci Smith, 93-1785 (La.App. 4 Cir. 4/14/94), 635 So.2d 1319, 1321. However, the exception allows the court to consider evidence that is admitted without objection to enlarge the pleadings. Stephenson v. Nations Credit Financial Services Corp., 98-1688, 98-1689 (La.App. 1 Cir. 9/24/99), 754 So.2d 1011; Sivils v. Mitchell, 96-2528 (La.App. 1 Cir. 11/7/97), 704 So.2d 25.
Appellate review determining the legal sufficiency of the allegations is not restricted to the petition. This Court may evaluate the evidence submitted without objections to the district court. No objections were lodged by any party to the deposition transcripts, documentary evidence, and discovery responses found in the record.
*626 The appeal of the district court's denial of BizCapital's motion for leave to amend also mandates a de novo standard of review.
The district court relied on La. R.S. 6:1124 when it granted the exceptions of no cause of action filed by Union Planters and Business Bank, dismissing with prejudice the claims of BizCapital and the cross-claims of Hibernia against Union Planters and Business Bank. The statute provides as follows:
No financial institution or officer or employee thereof shall be deemed or implied to be acting as a fiduciary, or have a fiduciary obligation or responsibility to its customers or to third parties other than shareholders of the institution, unless there is a written agency or trust agreement under which the financial institution specifically agrees to act and perform in the capacity of a fiduciary. The fiduciary responsibility and liability of a financial institution or any officer or employee thereof shall be limited solely to performance under such a contract and shall not extend beyond the scope thereof. Any claim for breach of a fiduciary responsibility of a financial institution or any officer or employee thereof may only be asserted within one year of the first occurrence thereof. This Section is not limited to credit agreements and shall apply to all types of relationships to which a financial institution may be a party.
La. R.S. 6:1124. (emphasis added.)
When interpreting statutes, the Louisiana Supreme Court has specifically stated:
The fundamental question in all cases of statutory construction is legislative intent and the reasons that prompted the Legislature to enact the law. Succession of Boyter, 99-0761 (La.1/7/00), 756 So.2d 1122, 1128. When a law is clear and unambiguous and its application does not lead to absurd consequences, it shall be applied as written, with no further inquiry made in search of the legislative intent. La. Civ.Code Ann. art. 9; La.Rev.Stat. Ann. 1:4.

* * *
Furthermore, "the object of the court in construing a statute is to ascertain the legislative intent and, where a literal interpretation would produce absurd consequences, the letter must give way to the spirit of the law and the statute construed so as to produce a reasonable result." First Nat'l Bank of Boston v. Beckwith Mach. Co., 94-2065 (La.2/20/95), 650 So.2d 1148, 1153 (quoting Smith v. Flournoy, 238 La. 432, 115 So.2d 809, 814 (1959) ).
Sultana Corp. v. Jewlers Mutual Ins. Co., XXXX-XXXX, pp. 3-4 (La.12/3/03), 860 So.2d 1112, 1115-1116.
The legislative history of La. R.S. 6:1124 states:
... [T]he bill concretely states that there is no fiduciary relationship between a bank and its customer just because the customer has an account at the bank or another relationship with the bank. An agreement would be required in order to establish a fiduciary relationship between a financial institution and a customer. This would not eliminate the obligation of good faith and fair dealing under the Civil Code...
... [T]his bill simply clarifies that a bank has no implied fiduciary duty to its customers absent a specific trust or written agreement. This bill would say that there is no trust relationship or a fiduciary relationship with your customer unless there is a trust agreement to that respect.
*627 Minutes, House Commerce Committee, 1991 Reg. Sess., May 15, 1991, at 12-13; Minutes, June 6, 1991, at 3.
After reviewing the minutes of the House Commerce Committee, this Court finds that the legislature did not intend to totally immunize banks from all legal duties in their relationship with customers and third parties. We find that the trial court's interpretation of La. R.S. 6:1124 conflicts with the letter and spirit of the law and would produce an unintended and unreasonable result. Applying the Supreme Court's clarification set forth in Sultana, the letter of the law should not lead to the absurd result that a bank should be rewarded for misleading a customer or third party. Accordingly, we find that Business Bank and Union Planters are not immune from the claims of negligent misrepresentation and detrimental reliance asserted by BizCapital and Hibernia.
Additionally, La.Code Civ. Proc. Art. 934 provides that a trial court shall allow amendment of a petition when the grounds for the exception of no cause of action may be removed. Because we find that La. R.S. 6:1124 does not afford banks blanket immunity in all settings, we also find that the trial court erred in not allowing BizCapital to amend its petition to allege fraud.

CONCLUSION
For the foregoing reasons, the judgment of the district court granting the exceptions of no cause of action filed on behalf of Business Bank and Union Planters is reversed. This matter is remanded for further proceedings.
REVERSED AND REMANDED.
CANNIZZARO, J., CONCURS WITH REASONS.
CANNIZZARO, J., concurs with reasons.
I am writing separately to point out and emphasize some of the very disturbing allegations in this case. They involve a flagrant breach of the acceptable standards of business conduct by Union Planters Bank and the Business Bank of Baton Rouge.
An overdraft in the amount of approximately four million dollars arose in an account at Union Planters in the name of Teleformation, Inc. doing business as Media Direct. Union Planters had paid checks against uncollected funds in the Media Direct account, and this resulted in the overdraft.
Union Planters entered into a workout agreement with Media Direct so that Media Direct could pay the overdraft. In effect, Union Planters "loaned" Media Direct the amount of the overdraft. Clearly, this was not an ordinary commercial loan.
Because Union Planters did not want to retain its loan relationship with Media Direct, Media Direct contacted various lenders to try to refinance the overdraft loan at Union Planters. One of the lenders Media Direct contacted was BizCapital Business & Industrial Development Corporation. When BizCapital contacted Union Planters regarding the loan from Union Planters to Media Direct, BizCapital was told that the reason Union Planters wanted to move the Media Direct loan to another lender was that Union Planters no longer handled a certain type of business. BizCapital has alleged that this was an untrue statement. In fact, BizCapital has characterized the loan from Union Planters to Media Direct as an overdraft loan that resulted because of an illegal checkkiting scheme perpetrated by Media Direct.
*628 Ultimately, pursuant to a participation agreement between BizCapital and Hibernia National Bank, a loan was advanced to Media Direct in the amount of $6,000,000, and the overdraft loan Media Direct owed to Union Planters was repaid. Hibernia and BizCapital each owned a fifty percent interest in the loan to Media Direct.
As a condition to the lenders making the loan, Media Direct was required to collect an account receivable owed to it in the approximate amount of $2,900,000. Immediately prior to their making the loan to Media Direct, an officer at Business Bank confirmed to Hibernia and BizCapital by telephone that he had in hand a check in the amount of $2, 900,000.00 that ostensibly represented the payment on the account receivable. This confirmation was made immediately prior to the funding of the loan to Media Direct by Hibernia and BizCapital.
Based on the assurances from Business Bank that the account receivable had been paid, Hibernia and BizCapital funded the loan to Media Direct, the proceeds of which were used to pay Media Direct's overdraft at Union Planters. Business Bank now contends that it has no record of ever receiving the $2,900,000 check, and it cannot explain its officer's statement that he had the check in hand when he confirmed the receipt of the check to Hibernia and BizCapital.
Media Direct defaulted on its loan from BizCapital and Hibernia. As a result BizCapital and Hibernia have lost a substantial amount of money. Union Planters and Business Bank now seek to avoid responsibility for their involvement in the losses suffered by BizCapital and Hibernia by claiming immunity from accountability under the terms of La. R.S. 6:1124.
Union Planters and Business Bank have mistakenly relied on that statute to avoid responsibility for losses incurred because of their misconduct. La. R.S. 6:1124 provides that there are no implied fiduciary obligations on the part of a financial institution unless there is a written agreement under which the institution specifically agrees to act as a fiduciary. Because neither Union Planters nor Business Bank was a party to a written agreement with Hibernia Bank or BizCapital, Union Planters and Business Bank have argued that they are immune from liability to BizCapital and Hibernia.
The majority has concluded that La. R.S. 6:1124 does not apply in the instant case, and I concur. I do not think that deliberate misrepresentations designed to benefit one party at the expense of another come within the purview of La. R.S. 6:1124. Therefore, I concur in the result reached by the majority.