STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

CA 09-342


PRIOLA CONSTRUCTION CORPORATION

VERSUS

PROFAST DEVELOPMENT GROUP, INC., ET AL.


\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2007-2398
HONORABLE R. RICHARD BRYANT, JR., DISTRICT JUDGE


\*\*\*\*\*\*\*\*\*\*


**BILLY HOWARD EZELL**
**JUDGE**


\*\*\*\*\*\*\*\*\*\*


Court composed of Michael G. Sullivan, Elizabeth A. Pickett, and Billy Howard Ezell, Judges.


**AFFIRMED.**


**Anna R. Gray**
**A. J. Gray, III**
**The Gray Law Firm**
**P. O. Box 1467**
**Lake Charles, LA 70602**
**(337) 494-0694**
**Counsel for Defendant/Appellee:**
**Capital One, N.A.**

**Thomas Patrick LeBlanc**
**Loftin, Cain, & LeBlanc**
**113 Dr. Michael DeBakey Drive**
**Lake Charles, LA 70601**
**(337) 310-4300**
**Counsel for Plaintiff/Appellant:**
**Priola Construction Corporation**

**EZELL, JUDGE.**

This appeal involves application of the Louisiana Credit Agreement Statutes, La.R.S. 6:1121- 6:1124, and accession principles. At issue is whether Capital One, N. A., is liable to Priola Construction Corporation for improvements Priola made to the Capital One building in downtown Lake Charles. The improvements were made pursuant to a Letter of Agreement with several defendants referred to for simplicity as the "Johnson Defendants."[1] The trial court granted Capital One's motions for summary judgment and dismissed all of Priola's claims against Capital One. Priola appealed, and for the following reasons, we affirm the judgment of the trial court.

## FACTS

Blake McCaskill, a commercial loan officer with Capital One, knew one of the Johnson Defendants, Fulton "Flip" Johnson, from their days of playing football together at McNeese State University. Mr. McCaskill heard that Mr. Johnson was looking at constructing a modular building facility in addition to some condominiums in the Lake Charles area, so he contacted Mr. Johnson about Capital One doing business with him. Discussions soon evolved into discussing the need for office space, so Mr. McCaskill told him about the Capital One Building.

On October 18, 2006, Capital One entered into a lease agreement with the Johnson Defendants to lease Suites 2100 and 2200, the twenty-first and twenty-second floors, in the Capital One Building. The twenty-first floor had been a restaurant, and the Johnson Defendants wanted to open a restaurant and sports bar. The twenty-second floor was to be the private offices for Mr. Johnson.

---

[1] The Johnson Defendants included Profast Development Group, Inc., Profast Development Group, L.L.C., FJ80 Enterprizes, L.L.C., 430 Club, L.L.C., Fulton "Flip" Johnson, and Randall Keith Ballard.

1

According to Mr. McCaskill, he had discussed the potential projects with a client of Priola. Josh Priola wanted to be introduced to Mr. Johnson, so Mr. McCaskill took him upstairs in the Capital One Building for an introduction. At the time, the Johnson Defendants had actually started some demolition work. On October 27, 2006, Priola entered into a Letter of Agreement with the Johnson Defendants to renovate the twenty-first floor of the Capital One Building. The anticipated costs were between $400,000.00 and $600,000.00. Priola agreed to be paid in a lump sum upon completion of the work or no later than January 31, 2007.

The Letter of Agreement further stated that Priola was agreeable to such terms provided:

> Pro Fast Development Group, LLC, provides Priola Construction Corporation, on or before October 30, 2006, proof satisfactory to Priola Construction Corporation that Pro Fast Development Group, LLC, has obtained a line of credit from a federally insured lending institution in an amount not less than $600,000.00, and that its agreement with the lender with respect to said line of credit provides that monies may be drawn against the line of credit only if disbursed by draft or electronic funds transfer payable solely and directly to Priola Construction Corporation; and (2) Fulton Johnson and any and all other members/owners of Pro Fast Development Group, LLC, on or before October 30, 2006, execute within a reasonable time after acceptance of this proposal all contracts and related documents necessary to effect the agreements proposed herein on terms mutually agreeable to the parties.

The Johnson Defendants wanted the work completed in order to host a New Year's Eve grand opening on December 31, 2006. Priola never received the proof that the Johnson Defendants had secured a line of credit. Due to the time constraints, Josh Priola claims he approached Mr. McCaskill a few days after the agreement was signed to inquire if Capital One had agreed to finance the improvements. Priola claims that Mr. McCaskill advised "they were collecting information, had one more piece of information to get. They got it, and it looked great and it was more than what they hoped for and the commitment process would begin when he got back in the

2

office." At that point, Priola began and completed the improvements at a cost in excess of $1.1 million.

Prior to completion, Priola entered into an amended contract with the Johnson Defendants on November 15, 2006, which increased the budget to between $850,00.00 and $950,000.00. On December 22, 2006, a separate contract was entered into between the Johnson Defendants and Priola for renovations to a separate space known as The V.I.P. Room for a proposed budget of $70,000.00.

A loan application to Capital One by the Johnson Defendants was not submitted until November 14, 2006. On December 4, 2006, the loan was denied for failure to submit proper financial documentation and supporting schedules. Priola found out that the loan had been denied on December 21, 2006.

On May 9, 2007, Priola filed suit against the Johnson Defendants claiming that they had paid nothing for the work performed by Priola and that it was owed $1,133,116.49. On June 1, 2007, the petition was amended to add Capital One as a defendant on the basis of negligent misrepresentation, detrimental reliance, and breach of contract. A preliminary default was entered against the Johnson Defendants on August 27, 2007. Capital One filed a motion for summary judgment.

A hearing on Capital One's motion for summary judgment was held on August 19, 2008. The trial court granted Capital One's motion and dismissed Priola's claims against it. Priola then filed a supplemental and amending petition elaborating on its claim for damages under the principles of accession. Again, Capital One moved for summary judgment. A hearing on the matter was held on December 17, 2008, with the trial court again ruling in favor of Capital One. Judgment was signed that same day which also included the ruling on the previous motion for summary judgment, thereby dismissing all of Priola's claims against Capital One in this matter. Priola

3

then appealed the judgment.

## SUMMARY JUDGMENT

Appellate review of the granting of a motion for summary judgment is *de novo*, using the identical criteria that govern the trial court's consideration of whether summary judgment is appropriate. *Bonin v. Westport Ins. Corp.*, 05-0886, p. 4 (La.5/17/06), 930 So.2d 906, 910; *Schroeder v. Bd. of Sup'rs of La. State Univ.*, 591 So.2d 342, 345 (La.1991). A motion for summary judgment is a procedural device used when there is no genuine issue of material fact. The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action and shall be construed to favorably accomplish these ends. La. C.C.P. art. 966(A)(2). A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue of material fact, and the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966; *Duncan v. USAA Ins. Co.*, 06-0363, p. 4 (La.11/29/06), 950 So.2d 544, 546-547. A fact is material if it potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. *Hines v. Garrett*, 04-0806, p. 1 (La.6/25/04), 876 So.2d 764, 765 (citing *Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512, p. 27 (La.7/5/94), 639 So.2d 730, 751). A genuine issue of material fact is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. *Hines*, 876 So.2d at 765-766.

*King v. Ill. Nat.'l Ins. Co.*, 08-1491, p. 6 (La. 4/3/09), 9 So.3d 780, 784.

Therefore, we will conduct a *de novo* review to determine if there are any genuine issues of material fact which would prevent the granting of summary judgment in favor of Capital One. We will also determine whether Capital One is entitled to summary judgment as a matter of law. La.Civ.Code art. 966(B).

## LOUISIANA REVISED STATUTES 6:1124

Priola argues that the trial court erred in concluding that the Louisiana Credit Agreement Statutes, specifically La.R.S. 6:1124, bars all actions for damages between a bank and a non-customer third party, regardless of the legal theory of recovery, if there is no written agreement between the bank and the non-customer third party. Priola contends that while La.R.S. 6:1124 does preclude the creation of a fiduciary

4

duty between a bank and either its customers or third parties in the absence of a written agreement specially creating a fiduciary relationship, the statute does not immunize a bank from all of its actions with respect to non-customer third parties.

Louisiana Revised Statutes 6:1124 provides (emphasis ours):

> No financial institution or officer or employee thereof **shall be deemed or implied to be acting as a fiduciary, or have a fiduciary obligation or responsibility** to its customers or **to third parties** other than shareholders of the institution, **unless there is a written agency or trust agreement under which the financial institution specifically agrees to act and perform in the capacity of a fiduciary**. The fiduciary responsibility and liability of a financial institution or any officer or employee thereof shall be limited solely to performance under such a contract and shall not extend beyond the scope thereof. Any claim for breach of a fiduciary responsibility of a financial institution or any officer or employee thereof may only be asserted within one year of the first occurrence thereof. This Section is not limited to credit agreements and shall apply to all types of relationships to which a financial institution may be a party.

Priola claims that it does not allege a fiduciary relationship with Capital One or the existence of fiduciary duties of loyalty and prudent administration as between them. Instead Priola alleges that Capital One voluntarily assumed a duty to disclose information to Priola pertaining to the loan request of the Johnson Defendants and is liable for disclosing inaccurate and misleading information upon which Priola relied to its detriment. Priola argues that its claims for negligent misrepresentation, detrimental reliance, and breach of contract are not foreclosed by La.R.S. 6:1124.

After reviewing the record, we observe that there is no evidence whatsoever that there was a contract between Priola and Capital One. Therefore, summary judgment as to Priola's breach of contract claim was certainly appropriate. In support of its argument regarding negligent misrepresentation and detrimental reliance, Priola cites *BizCapital Business & Industrial Development Corp. v. Union Planters Corp.*, 03-2208 (La.App. 4 Cir. 9/8/04), 884 So.2d 623, *writs denied*, 04-2473, 04-2505 (La. 1/14/05), 889 So.2d 267.

5

*BizCapital* involved lenders suing third-party banks for negligent misrepresentation and detrimental reliance regarding the financial status of the borrower. BizCapital alleged that Union Planters and Business Bank misrepresented to BizCapital the reason they sought a pay-off on a loan to Media Direct and further omitted to tell BizCapital about a $4 million overdraft and the suspiciously high volume of monetary transactions occurring in Media Direct's account. Other deliberate misrepresentations were also alleged. The trial court granted an exception of no cause of action filed by Union Planters and Business Bank relying on La.R.S. 6:1124.

On appeal, the fourth circuit found that La.R.S. 6:1124 does not afford banks blanket immunity in all settings and that a bank should not be rewarded for misleading a customer or third party. In finding that a bank is not immune from the claims of negligent misrepresentation and detrimental reliance, the fourth circuit reviewed the legislative history of La.R.S. 6:1124:

> ... [T]he bill concretely states that there is no fiduciary relationship between a bank and its customer just because the customer has an account at the bank or another relationship with the bank. An agreement would be required in order to establish a fiduciary relationship between a financial institution and a customer. This would not eliminate the obligation of good faith and fair dealing under the Civil Code ...
>
> ... [T]his bill simply clarifies that a bank has no implied fiduciary duty to its customers absent a specific trust or written agreement. This bill would say that there is no trust relationship or a fiduciary relationship with your customer unless there is a trust agreement to that respect.
>
> Minutes, House Commerce Committee, 1991 Reg. Sess., May 15, 1991, at 12-13; Minutes, June 6, 1991, at 3.

*BizCapital*, 884 So.2d at 626-27(alterations in original).

The fourth circuit reasoned that "the letter of the law should not lead to the absurd result that a bank should be rewarded for misleading a customer or third party." *Id.* at 627.

6

Louisiana Revised Statutes 6:1124 clearly provides that there is no fiduciary relationship between a bank and a third party unless agreed to in writing that a relationship of agency or trust exists between the parties. *Singleton v. Am. Sec. Bank of Ville Platte, Inc.*, 02-1109 (La.App. 3 Cir. 4/30/03), 849 So.2d 72. It does not foreclose the possibility of lawsuits for other causes of action which do not involve a fiduciary obligation. Therefore, we will examine the remaining causes of action raised by Priola to determine whether summary judgment was appropriate.

*Negligent Misrepresentation*

In *Barrie v. V.P. Exterminators, Inc.*, 625 So.2d 1007 (La.1993), the supreme court reviewed the history of the tort of negligent misrepresentation and recognized that "there must be legal duty on the party of the defendant to supply correct information, there must be a breach of that duty, and the breach must have caused plaintiff damage." *Id.* at 1015. "Whether a duty is owed is a question of law." *Id.* The supreme court went on to discuss when a duty to supply correct information arises. It discussed cases in which the duty owed to the tort victim involved both non-disclosure and misinformation when there is privity of contract or a fiduciary relationship. The supreme court then discussed the situation in which there is a communication of misinformation by the tort feasor directly to the user or the user's agent, in which case the tort feasor assumed the duty. In that situation, the tort feasor becomes a fiduciary and, therefore, liable for any negligent misrepresentation.

Citing *Barrie* among other cases, the supreme court recognized that "our jurisprudence has also limited negligent misrepresentation tort theory to cases wherein [a] contract or fiduciary relationship exists." *Daye v. Gen. Motors Corp.*, 97-1653, p. 6 (La. 9/9/98), 720 So.2d 654, 659. The court then went on to hold that Louisiana negligent misrepresentation cases are evaluated using the duty-risk

7

analysis. Later, this court recognized that before a bank can be found liable utilizing the duty-risk analysis under La.Civ. Code art. 2315, "it must first be determined that the bank owed a fiduciary duty to the plaintiff." *D & J Tire, Inc. v. Bank One*, *La., Nat'l Ass'n*, 02-935, p.2 (La.App. 3 Cir. 2/5/03), 838 So.2d 112, 114, *writ denied,* 03-667 (La. 5/2/03), 842 So.2d 1107 (quoting *Succession of McKnight*, 33,802, p.5 (La. App. 2 Cir. 10/4/00), 768 So.2d 794, 799, *writ denied*, 00-3072 (La. 2/9/01), 785 So.2d 822). *Also see Guidry v. Bank of LaPlace,* 94-1758 (La.App. 4 Cir. 9/15/95), 661 So.2d 1052.

This conclusion is supported by the supreme court's definition of "fiduciary" as found in *Scheffler v. Adams and Reese, LLP*, 06-1774, pp. 6-7 (La. 2/22/07), 950 So.2d 641, 647-48:

> A fiduciary relationship has been described as "one that exists 'when confidence is reposed on one side and there is resulting superiority and influence on the other.'" *Plaquemines Parish Commission Council v. Delta Development Company, Inc.*, 502 So.2d 1034, 1040 (La.1987), *quoting Toombs v. Daniels*, 361 N.W.2d 801, 809 (Minn.1985).
>
> > The word "fiduciary," as a noun, means one who holds a thing in trust for another, a trustee; a person holding the character of a trustee, or a character analogous to that of a trustee, with respect to the trust and confidence involved in it and the scrupulous good faith and candor which it requires; a person having the duty, created by his undertaking, to act primarily for another's benefit in matters connected with such undertaking.
>
> *State v. Hagerty*, 251 La. 477, 492, 205 So.2d 369, 374 (1967), *quoting* 36A C.J.S. Fiduciary, p. 381. One is said to act in a fiduciary capacity "when the business which he transacts, or the money or property which he handles, is not his own or for his own benefit, but for the benefit of another person, as to whom he stands in a relation implying and necessitating great confidence and trust on the one part and a high degree of good faith on the other." *Hagerty*, 251 La. at 493, 205 So.2d at 374-375, *quoting* BLACK'S LAW DICTIONARY (4th ed.1951).
>
> The term "fiduciary" is defined in the Uniform Fiduciaries Law, LSA-R.S. 9:3801(2), as follows:

8

> "Fiduciary" includes a trustee under any trust, expressed, implied, resulting or constructive, executor, administrator, guardian, conservator, curator, receiver, trustee in bankruptcy, assignee for the benefit of creditors, partner, agent, officer of a corporation, public or private, public officer, or any other persons acting in a fiduciary capacity for any person, trust or estate.

A required element of negligent misrepresentation is a fiduciary relationship or contract. Therefore, we find that La.R.S. 6:1124 would foreclose the possibility of a lawsuit against a bank for negligent misrepresentation unless there was a contract or a written agreement that the financial institution had a fiduciary obligation to the person claiming negligent misrepresentation. The trial court was correct in granting summary judgment in favor of Capital One regarding Priola's claim that Capital One was guilty of negligent misrepresentation.

*Detrimental Reliance*

Louisiana Civil Code Article 1967 provides for the doctrine of detrimental reliance as follows:

> A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. Recovery may be limited to the expenses incurred or the damages suffered as a result of the promisee's reliance on the promise. Reliance on a gratuitous promise made without required formalities is not reasonable.

The supreme court in *Suire v. Lafayette City-Parish Consolidated Government*, 04-1459, 04-1460, 04-1466, p. 31 (La. 4/12/05), 907 So.2d 37, 59, discussed the application of detrimental reliance as follows:

> The doctrine of detrimental reliance is "'designed to prevent injustice by barring a party from taking a position contrary to his prior acts, admissions, representations, or silence.'" *Babkow v. Morris Bart, P.L.C.*, 1998-0256 (La.App. 4 Cir. 12/16/98), 726 So.2d 423, 427 (quoting *Orr v. Bancroft Bag, Inc.*, 29,046 (La.App. 2 Cir. (1/22/97), 687 So.2d 1068, 1070)). To establish detrimental reliance, a party must prove three elements by a preponderance of the evidence: (1) a representation by conduct or word; (2) justifiable reliance; and (3) a change in position to one's detriment because of the reliance. *Lakeland*

9

*Anesthesia, Inc. v. United Healthcare of La., Inc.*, 2003-1662 (La.App. 4 Cir. 3/17/04), 871 So.2d 380, 393, *writ denied*, 2004-0969 (La.6/25/04), 876 So.2d 834; *Babkow*, 726 So.2d at 427. Significantly, to prevail on a detrimental reliance claim, Louisiana law does not require proof of a formal, valid, and enforceable contract. *Babkow*, 726 So.2d at 429 (citing *Morris v. People's Bank & Trust Co.*, 580 So.2d 1029 (La.App. 3 Cir.), *writ denied*, 588 So.2d 102 (La.1991)).

The deposition testimony in the present case reveals the following. Priola's whole case is based on a statement made by Blake McCaskill to Josh Priola. Due to the New Year's Eve deadline set by the Johnson Defendants, Mr. Priola contacted Mr. McCaskill by phone and inquired about the status of the loan to the Johnson Defendants. Mr. Priola stated that Mr. McCaskill told him "they were collecting information, had one more piece of information to get. They got it, and it looked great and it was more than what they hoped for and the commitment process would begin when he got back in the office." Mr. McCaskill agreed that he told Mr. Priola that it looked good for the Johnson Defendants based on what he received. Based on this verbal communication, Priola began remodeling the restaurant. Priola never received the letter of commitment as required by its own contract with the Johnson Defendants. The loan application was finally submitted on November 14, 2006, and on December 4, the loan was denied. Priola continued to negotiate contracts with the Johnson Defendants, even negotiating a final contract after Priola had notice that the Johnson Defendants had not been approved for the loan. Priola admitted that it never did any independent evaluation of the Johnson Defendants' ability to pay.

No deliberate attempt to mislead Mr. Priola on the part of Mr. McCaskill can be gleaned from these statements. Mr. Priola called Mr. McCaskill and asked about the status of the Johnson Defendants' loan. Mr. McCaskill told Mr. Priola that on paper things looked good. He further told Mr. Priola that he was going to begin the commitment process when he got back to the office. Priola proceeded at its own risk

10

without waiting for the letter of commitment that it required in the contract from the Johnson Defendants. Priola proceeded knowing that although the loan process had begun, the loan had not been approved. Furthermore, Priola negotiated a final contract with the Johnson Defendants knowing that the loan had not been approved, indicating that it would continue operating under the contracts as negotiated regardless of the loan status.

We find no genuine issues of material fact and that Capital One was entitled to judgment as a matter of law. Summary judgment was appropriate as to Priola's claims for breach of contract, negligent misrepresentation, and detrimental reliance.

## ACCESSION

Priola sought to recover from Capital One the cost of its improvements to the Capital One Building under the Louisiana Civil Code provisions on accession in relation to immovable property. Specifically, Priola relied on La.Civ.Code art. 495 which provides:

> One who incorporates in, or attaches to, the immovable of another, with his consent, things that become component parts of the immovable under Articles 465 and 466, may, in the absence of other provisions of law or juridical acts, remove them subject to his obligation of restoring the property to its former condition.
>
> If he does not remove them after demand, the owner of the immovable may have them removed at the expense of the person who made them or elect to keep them and pay, at his option, the current value of the materials and of the workmanship or the enhanced value of the immovable.

The trial court found that no contract existed between Capital One and Priola for the renovations and that the commercial lease between the Johnson Defendants and Capital One disposed of the accession rights reimbursement issue. Capital One claimed that the lease denied the Johnson Defendants any build-out expense since the place had previously operated as a restaurant/dining room and it considered the

11

improvements as cosmetic and unnecessary. Priola argues that the lease provisions do not apply because the provisions of the lease set the commencement date of the lease after Priola had completed substantially all of the improvements to the Capital One Tower.

Section 1.1 of the lease specifically provided that (emphasis in original): "**Space shall be taken in 'as-is' condition.**" Section 5.3 provided, in pertinent part:

> All other property at the Leased Premises and any alteration or addition to the Leased Premises (including wall-to-wall carpeting, paneling or other wall covering) and any other articles attached or affixed to the floor, wall or ceiling of the Leases Premises shall become the property of Lessor and shall remain upon and be surrendered with the leased Premises as part thereof at the termination of this Lease, Lessee hereby waiving all rights to any payment or compensation therefor. If, however, Lessor so requests in writing, Lessee will, at its expense, promptly remove any and all fixtures, equipment and property placed or installed by it in the Leased Premises and repair any damage caused by such removal.

Comment (b) to Article 495 provides, in pertinent part: "When improvements are made by a lessee in accordance with the terms of the lease, the rights of the parties are determined by the contract or under the law of lease. Article 495 applies only in the absence of other provisions of law or juridical act."

In *Smith v. State, Department of Transportation & Development*, 04-1317 (La. 3/11/05), 899 So.2d 516, the supreme court discussed the application of Article 495, noting that it is a supplementary remedy that applies in the absence of other laws or juridical acts.

Louisiana Civil Code Article 2695 provides:

> In the absence of contrary agreement, upon termination of the lease, the rights and obligations of the parties with regard to attachments, additions, or other improvements made to the leased thing by the lessee are as follows:
>
> (1) The lessee may remove all improvements that he made to the leased thing, provided that he restore the thing to its former condition.

12

(2) If the lessee does not remove the improvements, the lessor may:

(a) Appropriate ownership of the improvements by reimbursing the lessee for their costs or for the enhanced value of the leased thing whichever is less; or

(b) Demand that the lessee remove the improvements within a reasonable time and restore the leased thing to its former condition. If the lessee fails to do so, the lessor may remove the improvements and restore the leased thing to its former condition at the expense of the lessee or appropriate ownership of the improvements without any obligation of reimbursement to the lessee. Appropriation of the improvement by the lessor may only be accomplished by providing additional notice by certified mail to the lessee after expiration of the time given the lessee to remove the improvements.

(c) Until such time as the lessor appropriates the improvement, the improvements shall remain the property of the lessee and the lessee shall be solely responsible for any harm caused by the improvements.

Comment (b) to Article 2695 provides, in pertinent part, that:

Article 2695 (Rev. 2004) provides a suppletive rule of law that applies only in the absence of a contrary agreement regarding the fate of the improvements at the end of the lease. The agreement may be made at any time, such as at the making of the lease contract, or at any time before or after the making of the improvements.

Obviously, the law does not require that the lease have commenced when the agreement concerning improvements is made or even that the agreement regarding the fate of the improvements be confected before the improvements are made. In the present case, the agreement was made at the time of the making of the lease contract. Therefore, Article 495 does not apply in this case, since the lease determined that lessees would not be reimbursed for any improvements.[2]

Furthermore as stated in *Smith*, 899 So.2d at 533(citations omitted):

Article 495 provides a mechanism for a person to retain those items of value he incorporates or attaches to the property of another. Further, the

---

[2] We observe that pursuant to La.R.S. 9:4801-9:4855, The Private Works Act, Priola's claim for a privilege is limited to an owner who has contracted with it in writing to the price and work of the contract. In this case, that is the Johnson Defendants. This privilege is also inferior to the rights owed to the lessor.

13

article provides a mechanism for the landowner to have those improvements removed from his property, if he so desires, by demanding their removal. If upon demand the improver fails to remove, the owner may remove the items or elect to keep them and then pay the value of the items to the improver. However, Article 495 does not appear to contemplate a situation where the improver abandons his improvements, then makes a demands to be compensated for their value. Thus, Article 495 does not require a lessor to pay for improvements to a lessee if the lessee abandons the improvements upon the termination of the lease.

Even if Article 495 did apply, there is no testimony whatsoever that Capital One has demanded that Priola remove the improvements and restore the property to its former condition, a condition which must be met before Priola can demand compensation.

For these reasons, we find that summary judgment was also appropriate as to Priola's claim for reimbursement due to accession principles.

The judgment of the trial court granting Capital One's motions for summary judgment is affirmed. Costs of this appeal are assessed to Priola Construction Corporation.

**AFFIRMED.**