Judgment rendered September 23, 2020.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 53,527-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

BARBARA McNORTON HOVELL                    Plaintiff-Appellant

versus

ORIGIN BANK F/K/A                          Defendant-Appellee
COMMUNITY TRUST BANK

* * * * *

Appealed from the
Fourth Judicial District Court for the
Parish of Ouachita, Louisiana
Trial Court No. 2016-2046

Honorable Wilson Rambo, Judge

* * * * *

OFFICE OF DONALD L. KNEIPP            Counsel for Appellant,
By: Donald L. Kneipp                  Robert H. Holladay

WOOD LAW FIRM                         Counsel for Appellee
By: R. Douglas Wood, Jr.

HAYES, HARKEY, SMITH, & CASCIO
By: Thomas M. Hayes, III

* * * * *

Before WILLIAMS, GARRETT, and THOMPSON, JJ.

**THOMPSON, J.**

This appeal arises from the trial court's granting of an exception of no cause of action against a seller of a broadcast radio station by the bank who provided financing for the buyer. The relatively low threshold consideration for overcoming an exception of no cause of action is if the petition states a cause of action on *any* ground or portion of the demand. Plaintiff has set forth a potential cause of action in his pleadings, and we therefore reverse and remand the matter for further proceedings.

## SUMMARY

The applicable parties in this matter are the owner/seller of a broadcast radio station, the buyer, and the bank funding the purchase. The absence of various security interests inuring to the benefit of a subrogee of the bank's position is at the crux of the dispute. When the buyer stopped making installment payments on the loan, the bank seized a guarantor's certificate of deposit ("CD"), which had been pledged as security for the loan. The seller was ultimately revealed to be the source of the funds for the CD.

A seller may owner-finance the sale of a radio broadcast station, but Federal Communication Commission ("FCC") rules prohibit a seller from retaining a reversionary interest in the FCC broadcast license.[1] A broadcast license can have significant value and was one of the assets being conveyed in the present sale. The parties elected for the buyer to obtain a commercial loan. When the buyer was apparently unable to obtain independent financing, the seller, using a third party to disguise the actual source of the

_____

[1] *See* 47 C.F.R. § 73.1150.

funds, deposited the funds in a CD with the lending bank. The CD was in an amount equivalent to one hundred percent (100%) of the amount sought to be borrowed by purchaser. With that collateral, the bank provided the buyer with financing, the sale concluded, and the buyer began making regular monthly installments on the loan.

A few years later, the buyer stopped paying the monthly installments on the loan, and with the loan in arrears, the bank began deducting the payment amounts from the pledged CD. After subsequent delinquent payments, the bank seized the entire remaining loan balance due and returned the balance of the funds in the CD to seller.

The seller, now subrogated to the position of the bank, sought recovery from the borrower, who was the buyer, of its seized funds and filed suit against that buyer. During that process, the seller discovered the bank had not secured a personal guaranty from the buyer, an interest in the FCC broadcast license, or an interest in the furniture, fixtures, and equipment that comprised a part of the sale. The seller has alleged that when the bank was discussing the pledge of the CD with seller's undisclosed representative, the bank made verbal promises to obtain additional security, including a personal guaranty from the buyer and the seller and to file liens against the assets of the radio station being conveyed. The bank denies those allegations.

The seller asserts that the bank owed a duty of good faith and fair dealing in connection with obtaining the additional security, despite there being no written document to support seller's claims. The bank asserts that there is no writing memorializing any agreement to obtain additional

2

security on the loan and that it had no duty to obtain any of the security the seller alleges was promised to his undisclosed agent. The bank undertook its usual and customary underwriting in order to determine whether to offer a loan to the buyer and then obtained the security it deemed appropriate to support its lending decision.

The seller then filed suit against the bank for the alleged breach of the duty of good faith and fair dealing, which he asserts resulted in damages. The bank filed an exception of no cause of action against the seller, and the trial court granted the exception. The seller now appeals that judgment.

## FACTS AND PROCEDURAL HISTORY

On March 4, 2011, Holladay Broadcasting of Louisiana, LLC, owned and operated by Robert H. Holladay ("Holladay"), sold a radio station to KP Music Group, LLC ("KP Music"), for $700,000. KP Music financed the purchase of the radio station through Origin Bank F/K/A Community Trust Bank ("Origin") and executed two promissory notes dated March 2, 2011, to Origin, one for $50,000 in operating capital and the other for the $700,000 purchase price.

Origin required collateral for the notes in favor of KP Music. Original plaintiff in this action, Barbara McNorton Hovell ("Hovell"), pledged a certificate of deposit in the amount of $750,000, after replacing another woman who originally pledged the funds necessary to secure the loan. Hovell is Holladay's former mother-in-law. Hovell executed two assignments of deposit account in favor of Origin dated April 11, 2011, wherein she assigned a CD worth $750,000 to secure the promissory notes in favor of KP Music. Holladay alleges that Origin verbally agreed to secure

3

additional collateral for KP Music's loan, specifically including: 1) a UCC financing statement on the furniture, fixtures, and equipment belonging to the radio station owned by KP music, 2) a lien on KP Music's FCC License, 3) a personal guaranty from Holladay, and 4) a personal guaranty from Calvin H. Murry (the owner/operator of KP Music). The record contains no writing that reflects any such assertion by Origin Bank, and neither party has referred to any such writing.

Approximately four years after the purchase of the radio station and systematically paying the monthly installments as they came due, KP Music stopped making monthly payments in 2015. Origin sent Hovell written notification via certified mail that KP Music had missed a monthly payment and informed her that the monthly payment had been deducted from her CD, in accordance with the security agreement. In July 2015, after additional monthly payments were not made by KP Music, Hovell was notified that Origin had seized and liquidated the CD to satisfy the balance of KP Music's loan. The balance of the CD in excess of the loan balance was returned to Hovell.

On June 30, 2016, after alleged unsuccessful efforts to recover funds from KP Music in a separate lawsuit, Hovell, acting through her agent and attorney in fact, Holladay, filed a petition for damages against Origin. Hovell argued in her petition that because Origin liquidated her CD, she was subrogated to the rights of Origin against KP Music, and because Origin breached its commitment to acquire additional collateral to secure the loan, she suffered damages. The petition included copies of the bill of sale from Holladay Broadcasting to KP Music, the two promissory notes from KP

Music to Origin, the assignments of deposit account from Hovell to Origin to secure the promissory notes, and the certificate of deposit from Hovell. There was no reference to any independent due diligence by Hovell or Holladay regarding the creditworthiness of KP Music or its members. Further, there is no proof of any other security agreements or personal guaranties Hovell required from KP Music or its members that would inure in her favor should her funds be seized to pay the loan from Origin. Apparently, Hovell was satisfied to rely on any security interests and rights to which she may be subrogated, should Origin utilize her funds to pay the loan of KP Music. There is no indication Hovell required, prior to pledging the CD, any proof of the completion of any of the additional security measures that she claims Origin agreed to collect.

On December 17, 2018, in response to the action initiated by Hovell, Origin filed peremptory exceptions of no right of action, no cause of action, and, in the alternative, prescription. It asserted that Holladay had supplied the funding for the CD in Hovell's name and had used Hovell as a "straw man" to circumvent FCC regulations, which, as noted above, prohibit a seller from retaining a reversionary interest in the FCC license in which he has an ownership interest.[2]

Origin argued that the Louisiana Credit Agreement Statute ("LCAS") barred Hovell's action because there was no written agreement to obtain additional collateral. Any added security would have been in excess of 100% of the loan amount secured by the CD held by Origin, and would then

---

[2] *See* 47 C.F.R. § 73.1150. Any potential repercussions for such actions relative to FCC rules are not before this Court and pose no legal impact in the present matter, other than serving as evidence of possible motivations for the actions of some of the parties.

likely only inure to the benefit of a subrogated party, as Origin was completely secured with a certificate of deposit equal to its loan amount.

Hovell and Holladay then filed a motion to substitute Holladay as the plaintiff. The motion was granted, and Hovell was dismissed as a party in any capacity. Holladay filed a supplemental and amended petition for damages, claiming that "at the time these proceedings were originally filed, Hovell was acting as an agent for an undisclosed principal, who was Holladay, and the monies represented by that certain Certificate of Deposit dated March 28, 2011, . . . belonged to Holladay." Hovell states that she had previously filed suit against KP Music in another proceeding but asserts that because Origin did not acquire the other collateral, she (and now Holladay) was damaged because there was no additional collateral to recover in satisfaction of the debt.

On March 22, 2019, Origin filed a reconventional demand against Hovell, which made additional allegations about the nature of the loans and collateral involved between the parties, including that a former employee of Holladay Broadcasting, Kathy Landrum, originally pledged a CD as collateral for the KP Music loan. According to Origin, Landrum was Holladay's girlfriend and, as with Hovell, Holladay was the true source of those original funds as well.

On July 11, 2019, a hearing was held and the exception of no cause of action was submitted on briefs. On July 26, 2019, Holladay filed his memorandum in opposition to the exception of no cause of action. Holladay contended that the assignments of the deposit accounts, giving the CD in

6

pledge, satisfied the writing requirement of La. R.S. 6:1122.[3] He also stated that even if those documents did not satisfy the writing requirement, Origin still owed him the obligation of good faith and fair dealing under the Louisiana Civil Code. He contended that because Origin knew that Hovell was acting as an agent for Holladay, it had a duty to inquire about the nature of the agency and determine whether the agent had authority for the transaction on behalf of the principal, particularly where a loan contract was concerned. He acknowledged that Hovell was notified of the loan delinquency and that money would be taken from the CD to satisfy the debt. He asserted that the Bank should have notified him, whom it knew to be the principal, of the loan default instead of Hovell.

Origin maintained in its reply brief that the LCAS precludes all actions for damages arising from oral credit agreements regardless of the legal theory asserted. Origin argued that, in effect, if an agreement is not in writing, then it is not enforceable.

On October 28, 2019, the trial court issued a judgment finding that the exception of no right of action was moot; the exception of prescription was referred to the merits; the exception of no cause of action regarding Hovell was granted, dismissing all her claims with prejudice; and the exception of no cause of action regarding Holladay was also granted, dismissing all his claims with prejudice. By footnote, the trial court stated there was no need for delay for further amendment because "no curative" amendment could be

---

[3] La R.S. 6:1122 states: A debtor shall not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor.

made, given the absence of a writing upon which the suit was based. In response to the judgment, Holladay filed this appeal.

## PLAINTIFF'S ASSIGNMENT OF ERROR

Holladay asserts one assignment of error:

**In dismissing Holladay's claim(s) against Origin Bank F/K/A Community Bank Trust by granting the Bank's Exception of No Cause of Action, the trial court erred by not considering the Bank's failure to fulfill its duty of good faith and fair dealing that it owed to Holladay.**

## STANDARD OF REVIEW

Whether a petition states a cause of action is a question of law, and, on appeal, a judgment sustaining an exception of no cause of action is subject to a *de novo* standard of review. *Hardy v. Easterling*, 47,950 (La. App. 2 Cir. 04/10/13), 113 So. 3d 1178.

## DISCUSSION

By his assignment of error, Holladay contends that Origin knew of the agency-principal relationship that existed between himself and Hovell, owed him the obligation of good faith and fair dealing, and breached that duty.[4] Holladay argues that the obligation of good faith and fair dealing required Origin to notify him of KP Music's default, rather than simply notifying Hovell. Holladay further asserts that Origin had a duty to use the other sources of collateral before seizing the CD.

Origin essentially argues that, without a written agreement, it owed no duty to Holladay. Origin disputes Holladay's claims that it knew that Hovell

---

[4] Holladay acknowledges in his brief that the LCAS prevents the finding of a fiduciary duty between a bank and its customer absent a writing specifically providing for such a duty. His brief does not address the argument that the assignments of accounts constituted a written agreement between the parties, giving rise to a fiduciary duty, and as such, we do not address this argument.

was acting as Holladay's agent at the time of the assignments of the CD in 2011. It denies that its exceptions contained any admission that it knew, in 2011, that Hovell was Holladay's agent. Origin points out that the motion to substitute Holladay as the plaintiff states that Hovell was acting as an agent for an undisclosed principal.

Further, Origin maintains that it makes no difference whether it knew of the agency because it did not owe a fiduciary duty to Hovell or Holladay due to the lack of a written agreement required by La. R.S. 6:1124.[5] It urges that there was no written agreement to obtain other collateral for the loan or to notify Holladay of the default, and thus, Origin owed no duty to Holladay.

The peremptory exception of no cause of action, set forth in La. C.C.P. art. 927(A)(5), tests the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged. The exception is triable on the face of the petition alone, and all facts pled in the petition, or shown in any documents annexed thereto, must be accepted as true. La. C.C.P. arts. 931 and 853. An exception of no cause of action

---

[5] La. R.S. 6:1124 states:

> No financial institution or officer or employee thereof shall be deemed or implied to be acting as a fiduciary, or have a fiduciary obligation or responsibility to its customers or to third parties other than shareholders of the institution, unless there is a written agency or trust agreement under which the financial institution specifically agrees to act and perform in the capacity of a fiduciary. The fiduciary responsibility and liability of a financial institution or any officer or employee thereof shall be limited solely to performance under such a contract and shall not extend beyond the scope thereof. Any claim for breach of a fiduciary responsibility of a financial institution or any officer or employee thereof may only be asserted within one year of the first occurrence thereof. This Section is not limited to credit agreements and shall apply to all types of relationships to which a financial institution may be a party.

should be granted only when it appears beyond doubt that the plaintiff can prove no set of facts in support of any claim that would entitle him to relief. *Agrifund, LLC v. Radar Ridge Planting Co., Inc.*, 19-1528 (La. 11/25/19), 283 So. 3d 492. The threshold to overcome an exception of no cause of action is easily surmounted with clearly worded pleadings which set forth any cause of action. Such an accomplishment is not necessarily an indication of ultimate success when genuine issue of material facts and higher legal burdens are to be considered.

If the petition states a cause of action on *any* ground or portion of the demand, the exception should generally be overruled. Every reasonable interpretation must be accorded the language used in the petition in favor of maintaining its sufficiency and affording the plaintiff the opportunity of presenting evidence at trial. *Id*. Considering the above, this Court must determine if, at this moment and on this record, it appears beyond doubt that Holladay can prove no set of facts in support of the claim that he was entitled to a duty of good faith and fair dealing by Origin and that Origin breached that duty.

Generally, Louisiana law governing obligations provides that good faith shall govern the conduct of parties in whatever pertains to the obligation, and all contracts in Louisiana must be performed in good faith. La. C.C. art. 1759; La. C.C. art.1983. Louisiana does not recognize a separate and distinct obligation of good faith, the breach of which would be equivalent to a breach of the contract between the parties. *Favrot v. Favrot*, 10-0986 (La. App. 4 Cir. 02/09/11), 68 So. 3d 1099, 1107, *writ denied*, 11-0636 (La. 05/06/11), 62 So. 3d 127. The performance of an obligation or

contract can be characterized as being in good faith or bad faith, but the party alleging bad faith performance must first allege facts revealing the duty to perform an obligation. *Gulf Coast Bank and Trust Co. v. Warren*, 12-1570 (La. App. 4 Cir. 09/18/13), 125 So. 3d 1211, 1219.

This Court has recognized that the absence of a written fiduciary agreement does not foreclose the finding of a duty by a bank. *Simmons, Morris & Carroll, LLC v. Capital One, N.A.*, 49,005 (La. App. 2 Cir. 06/27/14), 144 So. 3d 1207. The legislature, in enacting La. R.S. 6:1124, "did not intend to totally immunize banks from all legal duties in their relationship with customers and third parties." *BizCapital Bus. & Indus. Dev. Corp. v. Union Planters Corp.*, 03-2208 (La. App. 4 Cir. 09/08/04), 884 So. 2d 623, 627, *writs denied*, 04-2473, -2502, (La. 01/14/05), 889 So. 2d 267, 268. The legislative history of La. R.S. 6:1124 specifically notes that it is not intended to eliminate the obligation of good faith and fair dealing afforded by the Civil Code. *Gulf Coast Hous. & Dev. v. Capital One*, 16-0296 (La. App. 4 Cir. 10/05/16), 203 So. 3d 366, 370 (*quoting* Minutes, House Commerce Committee, 1991 Reg. Sess., May 15, 1991, at 12-13).

Despite Origin's arguments to the contrary, the breach of an obligation of good faith and fair dealing by a bank that has a duty to perform an obligation to its customers or third parties *is* a cause of action recognized by Louisiana jurisprudence. The fact that Holladay may have been an undisclosed principal of Hovell does not preclude him from potentially having a cause of action against Origin. A person who contracts with the agent of an undisclosed principal, when the agent intended to contract on

11

behalf of the principal within his power to bind the principal, is generally liable to the principal. *Woodlawn Park Ltd. Partnership v. Doster Const. Co., Inc.*, 623 So. 2d 645, 647 (La. 09/03/93). An undisclosed principal, upon the revealing of his identity, has the right to bring suit to enforce the contract directly against the party who contracted with his agent. *Id.* Further, whether or not the bank knew of Holladay's agency relationship with Hovell is a fact greatly in contention between the parties.

Here, Holladay has alleged facts, which this Court is required to accept as true, that indicate a complex banking relationship between KP Music, Holladay, Hovell, and Origin. Holladay alleges that Origin verbally agreed to secure additional collateral to support KP Music's loan and that the bank was aware that the CD provided by Hovell actually belonged to Holladay. The various pleadings in this matter are unclear as to what Origin knew about these transactions and the parties involved in them.

This Court is not convinced, beyond doubt, that Holladay can prove no set of facts in support of any claim that would entitle him to relief. While this Court is concerned with the efforts undertaken by Holladay to camouflage his role and involvement in the banking transaction and potentially circumvent FCC rules, we must look to the plain wording contained in the pleadings in reaching our decision. The Court is also aware of the fact that at least one of the security interests Holladay asserts is missing is his own personal guarantee. Holladay appears to be asserting he was unaware that he had not executed a personal guaranty to Origin prior to authorizing Hovell to pledge the CD with his money. Any further inquiry into these matters is left to the trial court, as it must unravel Holladay's

claim that he is somehow damaged by his inability to bring an action against himself to enforce *his* personal guaranty, which he asserts Origin verbally agreed to obtain but failed to do so.

This Court is charged with making every reasonable interpretation of the language of the petitions in favor of maintaining its sufficiency and affording the plaintiff the opportunity of presenting evidence at trial. As the Louisiana Supreme Court recently confirmed, an exception of no cause of action should be granted only when it appears beyond doubt that the plaintiff can prove no set of facts in support of any claim that would entitle him to relief. A cause of action for breach of a duty of good faith and fair dealing by a bank to its customers or third parties exists under Louisiana jurisprudence, and Holladay has satisfied the relatively low threshold of having made sufficient factual allegations in his pleadings that, if proven true, could afford him relief.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is reversed and remanded for further proceedings. Origin Bank, F/K/A Community Trust Bank, is to pay all costs.

**REVERSED AND REMANDED.**