930 So.2d 906 (2006)
Mildred Fay Jones Sanders BONIN, et al.
v.
WESTPORT INSURANCE CORPORATION, et al.
No. 2005-CC-0886.
Supreme Court of Louisiana.
May 17, 2006.
*908 Preis, Kraft & Roy, L. Lane Roy, Lafayette; Bollinger, Ruberry & Garvey, Jeffrey A. Goldwater, Robert A. Chaney, for applicant.
The Cocheran Firm New Orleans, Richard J. Guidry; Rastanis Law Firm, L. Stephen Rastanis; Allen & Gooch, James H. Gibson, Lafayette, for respondent.
KIMBALL, Justice.
The issue presented in this case is whether the intentional act exclusions contained in a professional liability policy barring coverage for the dishonest or fraudulent acts committed by the insured also bars coverage for the attendant act of the employee. For the reasons that follow, we find that the claim against the employee is based upon, arises out of or is the indirect result of an insured's dishonesty and fraud and is barred under the terms of the policy. Therefore, we reverse the district court's ruling denying summary judgment and grant summary judgment in favor of defendant.

*909 FACTS AND PROCEDURAL HISTORY
On July 17, 1998, Bobbie Sanders, Sr. was killed in an accident while working on an offshore oil rig. Thereafter, Bobbie Sanders, Sr.'s wife, Mildred Sanders Bonin, and three children, Mary Sanders, Bobbie Sanders, Jr. and Michael Sanders, ("plaintiffs") hired attorney Allen J. Borne to represent their interests in claims arising out of the death of Bobbie Sanders, Sr. In October 1998, Borne negotiated a settlement of plaintiffs' claims against certain defendants without plaintiffs' knowledge or consent. Pursuant to the Receipt, Release, and Indemnification Agreement, the $450,000 settlement was to be split equally among the three children.
On November 1, 1998, Borne had his employee, Fonda Doucet, sign the Sanders' agreement and the corresponding acknowledgment as a witness to the signatures of Michael Sanders and Mildred Sanders Bonin. Doucet was unaware that Borne had forged the signatures. She could not recall, however, whether the forged signatures were present on the agreement when she signed as a witness. Doucet further identified the purported signature of the other witness, Lisa LaBauve, a former employee of Borne, as a forgery in Borne's handwriting. Borne then forged Mildred Sanders Bonin and Michael Bonin's names on the settlement checks and deposited them into his account at MC Bank. Borne never forwarded the settlement proceeds to the plaintiffs, nor did he inform them that he had settled their claims.
Borne had a Lawyers Professional Liability Policy issued by Westport Insurance Corp. ("Westport") effective October 1, 1998 to October 1, 1999 on a claims-made basis. The policy, according to its terms, covered all claims against the insured first made and reported to Westport in writing during the policy period or sixty days thereafter. The policy was not renewed.
Plaintiffs first learned that Borne had settled their claims in April 2000. On July 18, 2000, plaintiffs filed a petition for damages against MC Bank and Borne's heirs.[1] On April 11, 2001, plaintiffs filed a petition against Westport, alleging Westport was liable to plaintiffs for damages under the policy. Plaintiffs added Fonda Doucet as a defendant September 15, 2004.
Westport moved for summary judgment on April 23, 2003 contending that the policy did not provide coverage for plaintiffs' claim because the claim was first made after the expiration of the policy and therefore did not fall within the claims-made provisions or, alternatively, that coverage is precluded by Exclusions H[2] and A[3] of the policy. Plaintiffs asserted that the policy language requiring claims to be *910 made during the policy period, as applied to the facts of this case, violates La. R.S. 22:629[4] and that genuine issues of material fact exist concerning the application of Exclusions H and A. Plaintiffs averred that, although Borne's fraudulent actions are excluded from coverage under the policy, Doucet's witnessing of the document constituted negligence that was covered under the terms of the policy. Plaintiffs contended that Doucet's negligence was then imputed back to Borne, under the doctrine of respondeat superior.
The district court denied Westport's motion for summary judgment. Westport applied for supervisory writs to the Court of Appeal, First Circuit, and the court of appeal denied the request. We granted certiorari to review the correctness of the district court's ruling denying summary judgment.

DISCUSSION
A motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(B). This court reviews a grant or denial of a motion for summary judgment de novo. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342, 345 (La.1991). Thus, this court asks the same questions as does the trial court in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law. Robinson v. Heard, 01-1697, pp. 3-4 (La.2/26/02), 809 So.2d 943, 945.
Interpretation of an insurance policy usually involves a legal question which can be resolved properly in the framework of a motion for summary judgment. Robinson, 01-1697 at p. 4, 809 So.2d at 945. An insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts set forth in the Civil Code. Cadwallader v. Allstate Ins. Co., 02-1637, p. 3 (La.6/27/03), 848 So.2d 577, 580; Louisiana Ins. Guar. Ass'n v. Interstate Fire & Casualty Co., 93-0911, p. 5 (La.1/14/94), 630 So.2d 759, 763. The judicial responsibility in interpreting insurance contracts is to determine the parties' common intent. La. C.C. art. 2045; Louisiana Ins. Guar. Ass'n, 93-0911 at p. 5, 630 So.2d at 763; Garcia v. St. Bernard Parish School Board, 576 So.2d 975, 976 (La.1991). Words and phrases used in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning. La. C.C. art. 2047; Cadwallader, 02-1637 at p. 3, 848 So.2d at 580; Carbon v. Allstate Ins. Co., 97-3085, p. 4 (La.10/20/98), 719 So.2d 437, 439.
An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to *911 restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. Carrier v. Reliance Ins. Co., 99-2573, pp. 11-12 (La.4/11/00), 759 So.2d 37, 43 (quoting Louisiana Ins. Guar. Ass'n, 93-0911 at p. 5, 630 So.2d at 763). Unless a policy conflicts with statutory provisions or public policy, it may limit an insurer's liability and impose and enforce reasonable conditions upon the policy obligations the insurer contractually assumes. Carbon, 97-3085 at p. 5, 719 So.2d at 440; Louisiana Ins. Guar. Ass'n, 93-0911 at p. 6, 630 So.2d at 763.
If after applying the other general rules of construction an ambiguity remains, the ambiguous contractual provision is to be construed against the insurer and in favor of coverage. Cadwallader, 02-1637 at p. 3, 848 So.2d at 580; Carrier, 99-2573 at p. 12, 759 So.2d at 43-44. Under this rule of strict construction, equivocal provisions seeking to narrow an insurer's obligation are strictly construed against the insurer. Louisiana Ins. Guar. Ass'n, 93-0911 at p. 6, 630 So.2d at 764; Garcia, 576 So.2d at 976. That strict construction principle, however, is subject to exceptions. Cadwallader, 02-1637 at p. 3, 848 So.2d at 580; Carrier, 99-2573 at p. 12, 759 So.2d at 43-44. One of these exceptions is that the strict construction rule applies only if the ambiguous policy provision is susceptible to two or more reasonable interpretations. Cadwallader, 02-1637 at p. 3, 848 So.2d at 580; Carrier, 99-2573 at p. 12, 759 So.2d at 43-44. For the rule of strict construction to apply, the insurance policy must be not only susceptible to two or more interpretations, but each of the alternative interpretations must be reasonable. Cadwallader, 02-1637 at p. 3, 848 So.2d at 580; Carrier, 99-2573 at p. 12, 759 So.2d at 43-44.
In the instant case, Westport asserts that the district court erred in denying Westport's motion for summary judgment because the policy exclusions unambiguously bar coverage. Westport relies on language in the policy that excludes coverage for fraudulent acts. Specifically, the policy provides:
XIV. EXCLUSIONS
This POLICY shall not apply to any CLAIM based upon, arising out of, attributable to, or directly or indirectly resulting from:
A. any criminal, dishonest, malicious or fraudulent act, error, omission or PERSONAL INJURY committed by an INSURED. This exclusion does not apply to any INSURED who is not so adjudged;
Thus, the language of this exclusion states that the policy does not provide coverage for claims based upon, or at a minimum indirectly resulting from, any criminal, dishonest, malicious, or fraudulent act committed by an insured. Moreover, the exclusion does not apply to any insured who is not so adjudged.
Here, Borne's acts constitute "any criminal, dishonest, malicious or fraudulent act, error, omission or injury" under the terms of the policy. Plaintiffs and Westport agree that Borne entered into the Receipt, Release, and Indemnification Agreement without plaintiffs' knowledge or consent and then proceeded to misappropriate plaintiffs' funds. By settling plaintiffs' claim without their knowledge or consent and then misappropriating the resulting funds, Borne committed a dishonest and fraudulent act.
However, plaintiffs do not contend that the dishonest and fraudulent acts of Borne are covered under the policy. Instead, plaintiffs argue that they have a separate claim arising out of Doucet's witnessing of the document. Thus, plaintiffs assert that the issue of whether Doucet's witnessing of the document falls within the exclusions is *912 a genuine issue of material fact that precludes summary judgment.
We disagree with this assertion. While Doucet's actions might arguably be classified as dishonest or fraudulent, we need not make that factual determination to resolve this issue. Even assuming that Doucet's actions were not criminal, dishonest, malicious or fraudulent, plaintiffs' claim against Doucet could be excluded if it is based upon, arises out of, is attributable to, or directly or indirectly results from any dishonest or fraudulent act committed by an insured who is so adjudged.
The policy requires that, to be excluded, the dishonest or fraudulent act must be committed by "an INSURED." In Osbon v. Nat'l Union Fire Ins. Co., 93-1975, pp. 2-4 (La.2/28/94), 632 So.2d 1158, 1159-60, this court interpreted the term "the insured" in an intentional acts exclusionary clause contained in a fire insurance policy.[5] In Osbon, a wife attempted to recover under a policy because her home and its contents were destroyed by a fire intentionally set by her husband, who was also insured under the policy. Id. The court analyzed the pertinent provisions of the standard fire insurance policy form found in La. R.S. 22:691 F(2), which provided:
(2) SECOND PAGE OF STANDARD FIRE POLICY
Perils not included: This company shall not be liable for loss by fire or other perils insured against in this policy caused, directly or indirectly, by:
(i) neglect of the insured to use all reasonable means to save and preserve the property at and after a loss....
(emphasis added.)
We interpreted "the insured" to refer solely to the insured seeking to recover under the policy, explaining:
The phrase "the insured" is not defined in the Insurance Code. We find that the phrase "the insured" is ambiguous because it could refer to the named insured, any insured as defined in the policy, or the particular insured seeking coverage who commits an act triggering the exclusion or condition.
The article "the" is singular and is used to particularize the subject spoken of. "The" is a word of limitation. Black's Law Dictionary (6th ed.). Hence, "the" insured means only one insured. We find that the phrase "the insured" refers to a specific insured, namely, the insured who (1) is responsible for causing the loss and (2) is seeking to recover under the policy. Accordingly, under La. R.S. 22:691 F(2), a loss by fire is not covered if the insured seeking coverage is responsible for causing the loss by neglecting to "use all reasonable means to save and preserve the property at and after a loss." Here, Pauline Osbon is not responsible for causing the loss; therefore, coverage is not excluded.
Osbon, 93-1975 at 2, 632 So.2d at 1159-60.
Further, we distinguished between a policy provision that refers to "the insured" and one that refers to "an insured" or "any insured," stating:
Moreover, this interpretation is in line with other jurisdictions that have interpreted similar exclusions and conditions contained in statutes and insurance policies. Courts in other jurisdictions generally focus on the article modifying the word "insured," specifically, "the" insured, "an" insured, and "any" insured. A majority of courts interpret "any insured" as applying to all insureds as defined by the policy. Thus, the entire *913 policy would be void if any one insured committed arson thereby precluding recovery by an innocent co-insured. Spezialetti v. Pacific Employers Ins. Co., 759 F.2d 1139 (3rd Cir.1985); Hobgood and Lamb, Recovery by an Innocent Co-Insured, For The Defense 3 (July 1993). Similarly, "an insured" has been interpreted as applying to any unspecified insured that commits a wrongful act. Thus, a policy using the phrase "an insured" would bar all insureds from recovering if any insured commits arson. Hobgood and Lamb, supra, at 8-9; Vance v. Pekin Ins. Co., 457 N.W.2d 589 (Iowa 1990). Conversely, courts have found that "the insured" is singular and voids the policy only with respect for the insured who commits the wrongful act thereby permitting the innocent insured to recover. Ponder v. Allstate Ins. Co., 729 F.Supp. 60 (E.D.Mich.1990).
Osbon, 93-1975 at 3-4, 632 So.2d at 1160.
In the instant case, the policy exclusion refers to acts committed by "an INSURED." Under the policy, "INSURED" includes: the NAMED INSURED; any lawyer who is a present partner, officer, director, stockholder, shareholder, or employee of the NAMED INSURED; and any non-lawyer who was or is an employee of the NAMED INSURED. Under the terms of the policy, Allen J. Borne & Associates was the NAMED INSURED. Borne was a lawyer and partner of Allen J. Borne & Associates, and Doucet was a non-lawyer employee of Allen J. Borne & Associates. Thus, both Borne and Doucet qualify as insureds under the policy's definition.
While they both qualify as insureds, the exclusion refers to "an INSURED." As stated in Osbon, "an INSURED" refers to any unspecified insured and not necessarily the insured against whom the claim is brought. If, instead, the claim referred to "the insured," then perhaps it could be interpreted to apply only to the specific insured (1) who committed the dishonest or fraudulent act and (2) against whom the claim was brought. Because the policy refers to "an insured," however, the insured against whom the claim is brought need not be the same insured who committed the dishonest and fraudulent act. If any insured committed a dishonest or fraudulent act, the policy excludes claims made against any other insured as long as the claim is arising out of or indirectly resulting from that act. Therefore, the policy exclusion is broad enough to exclude a claim against Doucet if it is based upon, arises out of or indirectly results from Borne's, "an INSURED's," dishonest or fraudulent act.
Having determined that Borne is "an INSURED" contemplated by the exclusion, we must next determine whether the claim against Doucet is "based upon, arises out of, is attributable to, or directly or indirectly results from" Borne's dishonest and fraudulent act. This issue is similar to the question of whether an incidental act that arises out of the act or occurrence that triggers the policy exclusion, is also itself excluded, which has previously been addressed by our lower courts. The cases examining this question often arise in the context of parents' derivative liability for negligent supervision when a minor child commits an intentional tort. See Leslie v. Andrews, 04-2053 (La. 4 Cir. 5/25/05), 905 So.2d 368, (excluding insurance coverage for parents' negligent supervision when their daughter stabbed another girl in the abdomen); Perkins v. Shaheen, 05-1254 (La. 3 Cir. 3/3/04), 867 So.2d 135 (holding that a father's alleged negligent supervision was excluded from the homeowner's and farm liability policies when the damage resulted from an insured's intentional acts); Neuman v. Mauffray, 99-2297 (La. 1 Cir. 11/8/00), 771 *914 So.2d 283 (stating that an insurance policy excluding the intentional act of the minor who set fire to the home also excluded a claim of negligent supervision against minor's parents under the terms of the policy); Sanchez v. Callegan, 99-0137 (La. 1 Cir. 2/18/00), 753 So.2d 403 (holding that homeowner's policy that excluded coverage for damage arising out of any sexual act excluded coverage for claim against husband for molestation and also excluded coverage for claim against wife for negligence in failing to prevent the molestation). Generally, in resolving this issue, the lower courts simply parsed the language of the policy in holding that the incidental actions were excluded under the policies. We believe a similar approach should be used in the case at bar.
In the instant case, the policy exclusion states that the claim must be "based upon, arising out of, attributable to, or directly or indirectly resulting from" the dishonest and fraudulent act to be excluded. Here, plaintiffs seek to recover their settlement proceeds that Borne misappropriated and the damages resulting therefrom. Without Borne's dishonest and fraudulent act, the papers would not have been presented to Doucet for her signature as a witness. Accordingly, the claim against Doucet is based upon, arising out of, or at a minimum the indirect result of, Borne's dishonest and fraudulent conversion because without his fraud, there would be no damage.
Moreover, in all likelihood, Borne could have fraudulently converted plaintiffs' funds even if Doucet had not signed as a witness to the agreement. The agreement required the signature of two witnesses. Doucet signed as one witness, but Borne forged the signature of the other witness, Lisa LaBauve, a former employee. Borne also forged the names of plaintiffs. Thus, with the exception of Doucet's signature, Borne forged all of the signatures on the agreement. The fact that Borne forged other signatures suggests that Borne would not have refrained from forging Doucet's signature and converting plaintiffs' funds if Doucet had not witnessed the document herself.
Having determined that the claim against Doucet is based upon, arising out of, or indirectly resulting from Borne's fraudulent activity, we turn to the last sentence of the policy exclusion, which states that the "exclusion does not apply to any INSURED who is not so adjudged." Although the clause does not explicitly state what the insured must be adjudged of, the phrase "so adjudged" can only reasonably be read to mean that any "criminal, dishonest, malicious or fraudulent act" committed by "an INSURED" must be adjudged, thereby triggering the exclusion.
Plaintiffs assert that the exclusion cannot apply because Doucet has not been adjudged to have committed any dishonesty or fraud. The issue of whether Doucet committed any dishonesty or fraud in witnessing the documents has not yet been determined and is disputed by the parties. Therefore, at this stage, Doucet has not been so adjudged.
However, the clause does not specify which insured must be adjudged, but rather states that the exclusion does not apply to "any INSURED" who is not so adjudged. As stated above, this court has interpreted "any INSURED" in the same manner as "an INSURED." Thus, "any INSURED" refers to any unspecified insured. See Osbon, 93-1975 at 3-4, 632 So.2d at 1160.
Plaintiffs assert that Doucet is "any INSURED" and that if she is not adjudged to have committed the dishonesty or fraud then the exclusion does not apply against her. We agree that any claim against Doucet cannot be excluded *915 on the basis that her own actions have been adjudged dishonest or fraudulent. Nevertheless, any claim against Doucet based upon, arising out of or indirectly resulting from Borne's acts may still be excluded if Borne's actions are adjudged fraudulent or dishonest. Plaintiffs suggest that the insured against whom the claim was made would have to be the same insured adjudged to have acted dishonestly or fraudulently. We disagree and find that the exclusion applies if any insured, not necessarily the insured against whom the claim is made, who allegedly committed any dishonest or fraudulent act, must simply be adjudged to have committed that act to exclude any claim based upon, arising out of or indirectly resulting from the adjudged dishonest or fraudulent act.
Plaintiffs' interpretation that the insured against whom the claim was made must be the same insured who committed the dishonest or fraudulent act is unreasonable because it invalidates other provisions of the policy exclusion. Specifically, the "based upon, arising out of, attributable to, or directly or indirectly resulting from" clause would be rendered meaningless under plaintiffs' interpretation. The claim against Doucet would have to be the dishonest or fraudulent act itself instead of being based upon, arising out of, or indirectly resulting from the dishonest or fraudulent act. Plaintiffs' interpretation would further ignore the language of the policy exclusion stating that the dishonest or fraudulent act be committed by "an INSURED." Instead, the dishonest or fraudulent act would have to be committed by the insured against whom the claim was made.
Moreover, the structure of the policy exclusion also supports this conclusion. The exclusion references "INSURED" twice. First, the exclusion mentions the dishonest or fraudulent act "committed by an INSURED." In the next sentence, the exclusion states that it does not apply to "any INSURED who is not so adjudged." Thus, the second reference to "INSURED" refers to any of the unspecified insureds who committed the dishonest or fraudulent act mentioned previously. Therefore, the only logical interpretation of the exclusion is that if "any INSURED," including Borne, is adjudged to have acted dishonestly or fraudulently, then the policy excludes any claim based upon, arising out of or indirectly resulting from that act.
The United States Court of Appeals for the Fifth Circuit, in FDIC v. Mmahat, 907 F.2d 546 (5th Cir.1990), considered what constitutes being adjudged under the terms of an insurance policy that excludes coverage for dishonest or fraudulent acts. The exclusion at issue in Mmahat stated:
The policy shall not indemnify the Insured for any damages or claim expenses as the result of any claim:
A. that results in a final adjudication that any Insured has committed a dishonest, fraudulent or malicious act, error, omission or personal injury with deliberate purpose and intent. Nothing contained in the foregoing shall exclude coverage to any other Insured who is not so adjudged to have committed any such act, error, omission or personal injury as described above.
Mmahat, 907 F.2d at 549-50.
In Mmahat, plaintiffs argued that the law firm, Mmahat & Duffy, was not dishonest, and thus that insurance coverage was not excluded as to their conduct. Nevertheless, a jury found that both Mmahat and the firm had breached their fiduciary duties. Accordingly, the court held that:
Mmahat had been adjudged "dishonest" when the jury found he breached his fiduciary duty to Gulf Federal, so his conduct was excluded from the New *916 England policy's coverage. Further, the court held that since the jury also found that Mmahat & Duffy had breached its fiduciary duty, it was excluded from coverage as well.
Mmahat, 907 F.2d at 552.
The district court therefore allowed the adjudication to occur within the same trial. After the jury made the factual determination, the district court held that the policies were excluded.
Although "adjudged" is not defined by the policy in this case, we think a reasonable interpretation of the term contemplates a judicial determination. In the instant case, both parties agree that Borne converted plaintiffs' funds. Plaintiffs themselves state in their petition that Borne entered into the Receipt, Release, and Indemnification Agreement without plaintiffs' knowledge or consent and then proceeded to misappropriate plaintiffs' funds. Moreover, at oral argument, plaintiffs' counsel stated that he thought an adjudication could be made in the context of this case as to Borne's conduct.
In addition, plaintiffs entered into a settlement compromise with MC Bank wherein plaintiffs again recited that Borne forged plaintiffs' names on the Receipt, Release, and Indemnification Agreement and the checks and converted plaintiffs' funds. This compromise, however, may not rise to the level of being adjudged between plaintiffs and Westport, since Westport was not a party to the compromise.
Nevertheless, given the overwhelming evidence demonstrating Borne's misappropriation and plaintiffs' acknowledgment thereof, this court can clearly make a judicial determination that Borne's misappropriation constitutes a dishonest and fraudulent act under the terms of the policy. The issue of Borne's dishonesty and fraud is in the proper posture to be judicially determined in the context of a summary judgment proceeding because the facts involving Borne's misappropriation are undisputed.
Plaintiffs' claim against Doucet falls within the policy exclusion because the claim is based upon, arises out of or is the indirect result of a dishonest and fraudulent act committed by Borne, an insured under the policy. Summary judgment is appropriate because there are no issues of material fact relating to Borne's misappropriation and because Westport is entitled to judgment as a matter of law. Accordingly, the district court erred in denying Westport's motion for summary judgment.

DECREE
For all the above reasons, we find that plaintiffs are excluded from asserting a claim against Westport under the terms of the policy. Therefore, the district court's denial of summary judgment is reversed and summary judgment is hereby granted in favor of defendant.
REVERSED.
JOHNSON, J., concurs.
NOTES
[1] Borne died prior to suit being brought against him.
[2] Exclusion H provides:

VI. EXCLUSIONS
In addition to those exclusions contained in Section XIV. of the GENERAL TERMS & CONDITIONS, (other than Exclusion B. Contained in Section XIV. of the GENERAL TERMS & CONDITIONS, which shall not apply to this COVERAGE UNIT), this COVERAGE UNIT shall not apply to any CLAIM based upon, arising out of, attributable to, or directly or indirectly resulting from:
H. any misappropriation, or any dishonest or fraudulent conversion or commingling of funds. This exclusion does not apply to any INSURED who is not so adjudged;
[3] Exclusion A provides:

XIV. EXCLUSIONS
This POLICY shall not apply to any CLAIM based upon, arising out of, attributable to, or directly or indirectly resulting from:
A. any criminal, dishonest, malicious or fraudulent act, error, omission or PERSONAL INJURY committed by an INSURED. This exclusion does not apply to any INSURED who is not so adjudged;
[4] La. R.S. 22:629 provides:

A. No insurance contract delivered or issued for delivery in this state and covering subjects located, resident, or to be performed in this state or any group health and accident policy insuring a resident of this state, regardless of where made or delivered shall contain any condition, stipulation, or agreement:
(3) Limiting right of action against the insurer to a period of less than twelve months next after the inception of the loss when the claim arises under any insurance classified and defined in R.S. 22:6(10), (11), (12), and (13), or to a period of less than one year from the time when the cause of action accrues in connection with all other insurances unless otherwise specifically provided in this Code.
[5] In that policy, "insured" was defined as the named insured and residents of the named insured's household who were relatives.