HIGGINBOTHAM, J.
| ./This appeal concerns a summary judgment in favor of an insurance company, holding that the insurance company’s policy did not provide uninsured/underinsured motorist (UM) coverage for an injured guest passenger, who did not fit the insurance policy’s definition of an insured since she was not “using” the vehicle that was involved in the traffic accident. Agreeing with the trial court that UM coverage is not available under the facts of this case, we affirm.
FACTS
On July 30, 2012, Mona Nielson was riding as a guest passenger in a car driven by Thelma Nolan (a/k/a Mickey Ford) in Denham Springs, Louisiana. Nielson was injured when Nolan’s car was involved in an accident caused by an underinsured driver. After settling with and recovering the liability policy limits from the other driver’s liability insurer, Nielson filed the instant suit against Nolan’s liability insurer, Shelter Mutual Insurance Company (Shelter), seeking damages under the UM provisions of Shelter’s policy. Shelter filed a motion for summary judgment requesting dismissal of Nielson’s UM claim, because Nielson was not an “insured” as defined by Shelter’s policy for purposes of UM coverage. After a hearing, the trial court granted Shelter’s motion, and signed a judgment dismissing Nielson’s claims against Shelter. Nielson now appeals.
LAW AND ANALYSIS
Appellate courts review summary judgments de novo under the same criteria that govern the trial court’s consideration of whether summary judgment is appropriate. Shelton v. Standard/700 Associates, 2001-0587 (La.10/16/01), 798 So.2d 60, 64-65; Miller v. Superior Shipyard and Fabrication, Inc., 2001-2683 (La.App. 1st Cir.11/8/02), 836 So.2d 200, 203. An insurer seeking to avoid coverage through summary judgment must prove that some exclusion applies to [ preclude coverage. Gaylord Chemical Corp. v. Pro-Pump, Inc., 98-2367 (La.App. 1st Cir.2/18/00), 753 So.2d 349, 352.
Interpretation of an insurance policy usually involves a legal question that can be resolved properly in the framework of a motion for summary judgment. Robinson v. Heard, 2001-1697 (La.2/26/02), 809 So.2d 943, 945. An insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts set forth in the Louisiana Civil Code. Cadwallader v. Allstate Ins. Co., 2002-1637 (La.6/27/03), 848 So.2d 577, 580. If the language in an insurance policy is clear and unambiguous, it must be enforced as written. See La. Civ.Code art. 2046; Gaylord, 753 So.2d at 352. Courts should not strain to find ambiguity where none exists. Id. However, if there is any doubt or ambiguity as to the meaning of a provision in an insurance policy, it must be construed in favor of the insured and against the insurer. See La. Civ.Code art. 2056. Words and phrases used in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning. See La. Civ.Code art. 2047; Cadwallader, 848 So.2d at 580. Whether a policy is ambiguous is a question of law. Gaylord, 753 So.2d at 353. Unless an insurance policy conflicts with statutory provisions or public policy, it may limit an insurer’s liability and impose and enforce reasonable conditions upon the policy obligations the insurer contractually assumes. Bonin v. Westport Ins. Corp., 2005-0886 (La.5/17/06), 930 So.2d 906, 911.
Most insurance policies expressly define words or phrases which may be *700 understood in different senses. Where a policy of insurance contains a definition of any word or phrase, then that definition is controlling. Kottenbrook v. Shelter Mutual Ins. Co., 46,312 (La.App.2d Cir.5/18/11), 69 So.3d 561, 564, writ denied, 2011-1293 (La.9/23/11), 69 So.3d 1166. The Shelter policy defines and 14limits both liability and UM coverage to categories of individuals who have permission to “use” the covered vehicle. The pertinent provisions of the Shelter policy are as follows:
PART I — AUTO LIABILITY COVERAGES COVERAGE A — BODILY INJURY LIABILITY COVERAGE
* * *
INSURING AGREEMENT FOR COVERAGE A...
We will pay damages on behalf of an insured; but this agreement is subject to all conditions, exclusions, and limitations of our liability, stated in this policy-
ADDITIONAL DEFINITIONS USED IN COVERAGE A ...
* * *
(2) Insured means a person included in one of the following categories, but only to the extent stated for that category.
[[Image here]]
CATEGORY 4
Individuals who have permission or general consent to use the described auto are insureds for claims resulting from that use.
* * *
PART IV — COVERAGE E — UNINSURED MOTOR VEHICLE LIABILITY COVERAGE
⅝ ⅜ ⅜
INSURING AGREEMENT FOR COVERAGE E
If the owner or operator of an uninsured motor vehicle is legally obligated to pay damages, we will pay the uncompensated damages, but this agreement is subject to all conditions, exclusions, and limitations of our liability, stated in this policy.
ADDITIONAL DEFINITIONS USED IN COVERAGE E
In Coverage E:
(1) Damages means money owed to an insured for bodily injuries, sickness, or disease; sustained by that insured and caused by an accident arising out of the ownership or use of a motor vehicle.
[[Image here]]
(2) Insured means:
(a) You;
(b) Relatives;
(c) Individuals listed in the Declarations as an “additional listed insured” who do not own a motor vehicle, and whose spouse does not own a motor vehicle; and
(d) Any individual using the described auto with permission.
It is well-settled that a person who does not qualify as a liability insured under a policy of insurance is not entitled to UM coverage under the policy. Filipski v. Imperial Fire & Casualty Ins. Co., 2009-1013 (La.12/1/09), 25 So.3d 742, 745 (per curiam); Magnon v. Collins, 98-2822 (La.7/7/99), 739 So.2d 191, 196. As such, any determination of whether a person is entitled to UM benefits must follow a determination that the person is an insured for purposes of auto liability insurance coverage. Magnon, 739 So.2d at 196.
According to the plain language of the policy, Shelter owes uninsured damages only to individuals who are an “insured” for purposes of UM coverage. The policy clearly defines an insured for UM coverage as: (1) the named insured; (2) rela *701 tives; (3) an additional listed insured, and (4) an individual “using” the described auto with permission. It is undisputed that Nielson is not a named insured on Shelter’s policy, is not a relative of the named insured (Nolan), and is not an additional listed insured on the policy. Thus, under the plain language of the Shelter policy, the only possibility for Nielson to be considered an insured for UM purposes is if she were “using” Nolan’s vehicle with Nolan’s permission.
Shelter’s policy places the word “using” in bold, indicating that it is a defined term by the policy.[1] The policy definition of “use” means: “physically controlling, or attempting to physically control, the movements of a vehicle. It includes any emergency repairs performed in the course of a trip, if those repairs are necessary to the continued use of the vehicle.” Therefore, if Nielson is to be considered an insured for liability or UM purposes under Shelter’s policy she must have been “using” the vehicle by physically controlling or attempting to physically control the movements of Nolan’s vehicle. It is undisputed, however, that Nielson was simply a passenger in Nolan’s vehicle and was not controlling or attempting to control its movement in any way.
Shelter’s policy further defines “passenger” as an “individual who is occupying one of the seats of a vehicle with permission but does not include the operator of a vehicle.” Additionally, “operator” is defined in Shelter’s policy as | n“an individual who is using a vehicle.” Thus, the Shelter policy very clearly and unambiguously makes a distinction between one who is a driver or an operator, such as Nolan in this case, and one who is merely a guest passenger who is occupying one of the seats of the vehicle, such as Nielson in this case. Pursuant to Shelter’s policy language, merely being a guest passenger in the insured vehicle does not entitle the individual to UM coverage. The same analysis excludes Nielson as an insured under the general liability coverage of Shelter’s policy since Nielson was not “using” the vehicle as defined by the policy. See Magnon, 739 So.2d at 197.
Nielson contends, however, that Shelter’s policy language is against public policy and in conflict with statutory provisions mandating UM coverage in Louisiana.[2] Nielson relies on the recent Louisiana Supreme Court case, Bernard v. Ellis, 2011-2377 (La.7/2/12), 111 So.3d 995, 1003. In Bernard, the Supreme Court evaluated whether there was UM coverage for a guest passenger under a policy issued by Imperial Fire and Casualty Insurance Company, specifically recognizing that Imperial’s policy did not define • the term “use,” which necessitated the Court to look to jurisprudence and interpret the ambiguous term broadly to include riding as a passenger. It is important to note the factual distinction between Bernard and the case before us, since we are dealing with an insurance policy that specifically defines the term “use” to not include a passenger. We further note that the Supreme Court did not hold that Louisiana law prohibits an insurance company from excluding a guest passenger from UM coverage. Rather, it simply held that under the ambiguously undefined policy language at issue in Bernard, a passenger would be *702 included as an insured for UM purposes. Id. at 1005. Shelter’s policy, on the other hand, very clearly defines “use” in such 17a way that a guest passenger is not an insured for purposes of liability or UM coverage. Thus, we find that Bernard is not controlling of the facts in this case.
While there is strong public policy in favor of UM insurance coverage in Louisiana, an insured is free to reject or limit UM coverage in order to reduce premiums. The Shelter policy clearly limits who is covered for UM purposes, and the policy should be enforced as written.[3] Gaylord, 753 So.2d at 352. For these reasons, we conclude that the trial court correctly granted summary judgment in favor of Shelter and dismissed Nielson’s UM claims. We find no merit to Nielson’s assignments of error.
CONCLUSION
For the outlined reasons, the judgment of the trial court granting summary judgment on the issue of UM coverage in favor of Shelter Mutual Insurance Company is affirmed. Costs of this appeal are assessed to Mona Nielson.
AFFIRMED.
WHIPPLE, C.J., concurs & assigns reasons.
McCLENDON, J., agrees and assigns additional reasons.

. According to the Shelter policy, bolded words in the policy that are derived from a defined word have the same root meaning.

. We acknowledge that UM coverage in Louisiana embodies strong public policy to provide full recovery for innocent automobile accident victims who suffer damage caused by a tortfeasor with no or inadequate liability coverage. See Duncan v. U.S.A.A. Ins. Co., 2006-363 (La.11/29/06), 950 So.2d 544, 547.

. Such limitations are permissible under Louisiana’s UM law. See Magnon, 739 So.2d at 195; Kottenbrook, 69 So.3d at 566.