# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 23-686

STEPHANIE MCFARLAND

VERSUS

SHELTER MUTUAL INSURANCE COMPANY
AND USAA CASUALTY COMPANY

**********

ON APPLICATION FOR SUPERVISORY WRITS FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2021-517
HONORABLE RONALD F. WARE, DISTRICT JUDGE

**********

## WILBUR L. STILES
## JUDGE

**********

Court composed of Sharon Darville Wilson, Charles G. Fitzgerald, and Wilbur L. Stiles, Judges.

**WRIT GRANTED AND MADE PEREMPTORY.**

**J. Lee Hoffoss, Jr.**
**Donald W. McKnight**
**Lee Hoffoss Injury Lawyers, LLC**
**517 West College Street**
**Lake Charles, LA 70806**
**(225) 448-2267**
**COUNSEL FOR PLAINTIFF/RESPONDENT:**
    **Stephanie McFarland**


**Christopher P. Ieyoub**
**Karen M. Green**
**Plauché, Smith & Nieset, LLC**
**1123 Pithon Street**
**Lake Charles, LA 70601**
**(337) 436-0522**
**COUNSEL FOR DEFENDANT/RELATOR:**
    **Shelter Mutual Insurance Company**


**V. Ed McGuire, III**
**Plauche, Smith & Nieset, LLC**
**1123 Pithon Street**
**Lake Charles, LA 70601**
**(337) 436-0522**
**COUNSEL FOR DEFENDANT/RESPONDENT:**
    **USAA Casualty Company**

**STILES, Judge.**

This writ application is from the trial court's denial of Defendant Shelter Mutual Insurance Company's (Shelter's) motion for summary judgment. For the following reasons, we grant the writ application, reverse the trial court's ruling denying Shelter's motion for summary judgment, and enter summary judgment in favor of Shelter. We dismiss all claims against it with prejudice.

## FACTUAL AND PROCEDURAL HISTORY

On February 28, 2019, Plaintiff Stephanie McFarland was travelling as a passenger in a Ford F-150 owned and operated by her mother, Pamela Harris, when a tire from an unidentified vehicle struck a trailer attached to Ms. Harris' truck. Ms. Harris lost control of the truck, resulting in a collision with another vehicle.

Plaintiff instituted this matter against her uninsured/underinsured motorist insurer, USAA Casualty Insurer, and against Ms. Harris' uninsured/underinsured motorist insurer, Shelter. In response, Shelter filed a motion for summary judgment in February 2022, asserting that Plaintiff was not insured under the explicit language of the UM portion of Ms. Harris' Shelter policy and, therefore, Shelter was not liable for Plaintiff's alleged injuries.

Following a September 2023 hearing, the trial court denied Shelter's motion for summary judgment. Shelter thereafter filed an application for supervisory writs with this court. After review of the writ application, this Court allowed the parties the opportunity to request oral argument and submit additional briefing in accordance with La.Code Civ.P. art. 966(H).[1] The court also ordered a stay of the trial court proceedings pending this court's ruling. Neither party requested oral argument. Plaintiff submitted an additional brief.

---

[1] Louisiana Code of Civil Procedure Article 966(H) provides that, "[o]n review, an appellate court shall not reverse a trial court's denial of a motion for summary judgment and grant a summary judgment dismissing a case or a party without assigning the case for briefing and permitting the parties an opportunity to request oral argument."

By Shelter's writ application, it argues that:

1. The district court erred in denying Shelter's motion for summary judgment because the court ignored the clear language of the insurance contract to expand the coverages beyond the intent of the parties.

2. The district court erred in failing to engage in the two-step analysis articulated by the Louisiana Supreme Court in *Green ex rel. Peterson v. Johnson*, 14-0292 (La. 10/15/14), 149 So.3d 766, to determine if Stephanie McFarland is entitled to UM coverage under the Shelter policy.

3. The district court erred in denying Shelter's motion for summary judgment on the basis of public policy in light of the Louisiana Supreme Court's holding that there is no public policy mandating UM coverage for guest passengers when those guest passengers are not insureds under the policy.

(Footnote omitted.)

## DISCUSSION

Louisiana Code of Civil Procedure Article 966(A)(3) provides that "a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." An appellate court reviews summary judgment *de novo* under the same criteria that govern the trial court's consideration of whether summary judgment is appropriate, *i.e.*, whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law. *Wright v. La. Power & Light*, 06-1181 (La. 3/9/07), 951 So.2d 1058.

Moreover, interpretation of an insurance policy generally involves a legal question properly resolved by a motion for summary judgment. *Bonin v. Westport Ins. Corp.*, 05-886 (La. 5/17/06), 930 So.2d 906. As insurance policies are contracts between the parties, they should be construed using the general rules of interpretation of contracts set forth in the Civil Code. *Id.* In this regard, La.Civ.Code art. 2047 provides that words in a contract are to be construed using their generally prevailing meaning. The supreme court has explained that "[t]he rules of construction do not

2

authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists or the making of a new contract when the terms express with sufficient clearness the parties' intent." *Cadwallader v. Allstate Ins. Co.*, 02-1637, pp. 3-4 (La. 6/27/03), 848 So.2d 577, 580. Unless an insurance policy conflicts with statutory provisions or public policy, it may limit an insurer's liability and impose and enforce reasonable conditions upon the policy obligations the insurer contractually assumes. *Bonin*, 930 So.2d 906.

Mindful that our review of the motion for summary judgment is *de novo*, we consider Shelter's assertion that it is entitled to dismissal of Plaintiff's claims as the policy expressly excludes guest passengers from UM coverage. The supreme court has explained that, when the existence of UM coverage under a policy of insurance is called into question, a two-step analysis is required as follows: "(1) the automobile insurance policy is first examined to determine whether UM coverage is contractually provided under the express provisions of the policy; (2) if no UM coverage is found under the policy provisions, then the UM statute is applied to determine whether statutory coverage is mandated." *Green ex rel. Peterson v. Johnson*, 14-292, p. 9 (La. 10/15/14), 149 So.3d 766, 774. Shelter maintains that, under the *Green* analysis, Plaintiff is entitled to neither contractual UM coverage, nor statutory UM coverage.

Employing the *Green* analysis on *de novo* review, we first consider whether the Shelter policy provided UM coverage to Plaintiff.

We begin with review of the liability portion of the policy as the supreme court has explained that "[a]lthough Louisiana's public policy strongly favors UM coverage and a liberal construction of the UM statute, it is well-settled that a person who does not qualify as a liability insured under a policy of insurance is not entitled to UM coverage under the policy." *Magnon v. Collins*, 98-2822, p. 5 (La. 7/7/99), 739 So.2d 191, 196. In this regard, the Shelter policy sets forth four categories of insureds for liability purposes, including Category 4 which provides coverage for "**Individuals** who

3

have **permission** or **general consent** to **use** the **described auto** are **insureds** for **claims** resulting from that **use**."[2]

Specific to UM coverage, the policy again sets forth four categories of insureds as follows:

> (2) **Insured** means:
>
> > (a) **You;**
> >
> > (b) **Relatives;**[3]
> >
> > (c) **Individuals** listed in the **Declarations** as an "additional listed insured" who do not own a motor vehicle, and whose **spouse** does not **own a motor vehicle;** and
> >
> > (d) Any **individual using** the **described auto** with **permission**.

The parties agree that Plaintiff does not meet the requirements of an "insured" under the first three categories. In further arguing that Plaintiff does not meet the requirements of an "insured" under category (d), Shelter focuses on the policy's defined terms of "use," "operator," and "passenger."

The Shelter policy contains the following definitions:

> (30) **Operator** means an **individual** who is **using** a vehicle.
>
> > . . . .
>
> (33) **Passenger** means an **individual** who is **occupying** one of the seats of a vehicle with **permission** but does not include the **operator** of a vehicle.
>
> > . . . .
>
> (54) **Use** means physically controlling, or attempting to physically control, the movements of a vehicle. It includes any emergency repairs performed in the course of a trip, if those repairs are necessary to the continued **use** of the vehicle.

---

[2] We have maintained the Shelter's policy inclusion of bold typeface for terms defined within the policy.

[3] While Plaintiff is Ms. Harris' daughter, the record indicates that she is not a resident of Ms. Harris' household and thus does not meet the policy's definition of "relative."

4

Shelter argues that Plaintiff does not fit any category of "using" the vehicle while being an operator and thus does not satisfy the requirements of an insured under category (d), *i.e.*, an "individual *using* the described auto with permission." (Emphasis added.) Plaintiff was instead only a passenger as she was occupying a seat in the vehicle and was not operating the vehicle.

Following review of the policy and the undisputed facts, we find merit in Shelter's position. The Shelter policy specifically defines "use" as "physically controlling, or attempting to physically control, the movements of a vehicle." As a passenger, Plaintiff was not performing any of these functions and was therefore not "using" the insured vehicle. Although Plaintiff suggests that the policy's definition of "use" must yield to a broader interpretation than clearly provided for by the clear terms of the policy, "[w]hen a policy of insurance contains a definition of any word or phrase, this definition is controlling." *Maxi v. Bates*, 54,256, p. 9 (La.App. 2 Cir. 4/13/22), 338 So.3d 564, 570.

Having found that UM coverage is not contractually provided to Plaintiff under the express provisions of the Shelter policy, we next consider whether statutory coverage is mandated. *See Green*, 149 So.3d 766. Louisiana Revised Statutes 22:1295 provides for uninsured motorist coverage as:

> (1)(a)(i) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle designed for use on public highways and required to be registered in this state or as provided in this Section unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, *for the protection of persons insured thereunder* who are legally entitled to recover nonpunitive damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death resulting therefrom . . . .

(Emphasis added.) On application of the policy's definition of "use," Plaintiff was not insured under the Shelter policy for liability in this instance as she was not "physically

controlling, or attempting to physically control, the movements of a vehicle." She was instead a mere passenger/occupant. Absent liability coverage, La.R.S. 22:1295(1)(a)(i) cannot be construed to otherwise require an insurer to provide UM coverage. Rather, the statute pertains to coverage "for the protection of persons insured thereunder[.]" *Id.* *See also Magnon* 739 So.2d at 196 ("it is well-settled that a person who does not qualify as a liability insured under a policy of insurance is not entitled to UM coverage under the policy.")

That requisite also undermines Plaintiff's further reliance on La.R.S. 22:1295(1)(c)(i), a provision supplying the priorities of UM coverage in the event that an injured person has multiple insurance policies on which to rely. Plaintiff argues in her supplemental brief to this court that La.R.S. 22:1295(1)(c)(i) reflects a legislative mandate "that all policies provide that when a person occupying an automobile not owned by that person is injured, UM coverage on the vehicle they are occupying is primary." However, La.R.S. 22:1295(1)(c) foundationally addresses a circumstance where "*the insured* has any limits of uninsured motorist coverage in a policy of automobile liability insurance, *in accordance with the terms of Subparagraph (1)(a) of this Section*[.]" (Emphasis added.) As stated, Plaintiff is not an "insured" under the terms of La.R.S. 22:1295(1)(a).[4]

---

[4] Plaintiff focuses on an excerpt of La.R.S. 22:1295(1)(c)(i) which indicates that "[t]he uninsured motorist coverage on the vehicle in which the injured party was an occupant is primary." Reference to the larger context of the priority provision, however, reveals that it is dependent on the status as an insured under Subparagraph (1)(a). La.R.S. 22:1295(1)(c) (emphasis added) provides:

> (c) *If the insured has any limits of uninsured motorist coverage in a policy of automobile liability insurance, in accordance with the terms of Subparagraph (1)(a) of this Section*, then such limits of liability shall not be increased because of multiple motor vehicles covered under such policy of insurance, and such limits of uninsured motorist coverage shall not be increased when the insured has insurance available to him under more than one uninsured motorist coverage provision or policy; however, with respect to other insurance available, the policy of insurance or endorsement shall provide the following with respect to bodily injury to an injured party while occupying an automobile not owned by said injured party, resident spouse, or resident relative, and the following priorities of recovery under underinsured motorist coverage shall apply:

> (i) The uninsured motorist coverage on the vehicle in which the injured party was an occupant is primary.

We similarly find no merit in Plaintiff's contention that La.R.S. 32:900(B)(2) demonstrates the legislature's intent to require an insurer to provide UM coverage for a person occupying an automobile not operated by that person. Louisiana Revised Statutes 32:900(B)(2), which provides the statutory omnibus clause, requires a motor vehicle liability policy to "insure the person named therein and any other person, as insured, using any such motor vehicle[.]" In addition to the fact that La.R.S. 32:900(B)(2) relates to liability insurance and not to UM coverage, the statute further pertains to either a named insured or "any other person, *as insured, using*" the motor vehicle. (Emphasis added.) Under the terms of the Shelter policy, Plaintiff is not an insured in the underlying accident as the policy specifically requires that "use" necessarily entails "physically controlling or attempting to physically control the movements of the vehicle."

Having considered both La.R.S. 22:1295 and La.R.S. 32:900(B)(2) as required under the second component of the *Green* analysis, we conclude that UM coverage is not statutorily mandated in favor of Plaintiff. We therefore find that the trial court erred in denying Shelter's motion for summary judgment.

In concluding that summary judgment is appropriate, we are mindful that Plaintiff cites jurisprudence which she suggests mandates UM coverage in this instance. In particular, Plaintiff relies on *Bernard v. Ellis*, 11-2377 (La. 7/2/12), 111 So.3d 995, a matter in which the supreme court indicated that, if a plaintiff is insured under a policy's liability coverage, the plaintiff is further entitled to UM coverage. Plaintiff maintains that, by extension, "[s]ince a guest passenger is covered, as a matter of law, by the liability portion of the policy, the guest passenger is covered by the UM portion." The present case is factually distinguishable from *Bernard*, however.

Critically, in *Bernard*, the supreme court considered whether UM coverage was afforded a guest passenger under a policy that did not define the term "use." The supreme court thus explained that it was "tasked with determining whether the Plaintiffs

7

are insureds under" the policy's definition of "'insured person[.]'" *Id.* at 1001. The policy, in turn, broadly defined "'insured person' as 'any person with respect to an accident **arising out of that person's use** of a covered vehicle with the express or implied permission of you. (Emphasis added.)" *Id.* The supreme court concluded that the general and comprehensive use of the term "arising out of" was to be construed broadly to afford coverage. *Id.* at 1005.

In stark contrast to the policy in *Bernard*, the Shelter policy in this case contains a definition of "use" and makes a definitive distinction between a mere passenger/occupant and an operator of the vehicle. Under those definitions, Plaintiff is not an insured under *either* the liability portion of the policy or the UM portion of the policy. Simply, Shelter's contract excludes Plaintiff from both the liability and UM portions of its policy under the circumstances of this case. *Bernard* does not preclude such an exclusion.

Importantly, the supreme court has explained that courts are not to invalidate an insurance policy's exclusion of coverage "based on so-called 'public policy' that is devoid of—or in, fact, contrary to—statutory authority." *Landry v. Progressive Sec. Ins. Co.*, 21-621, p. 11 (La. 1/28/22), 347 So.3d 712, 720. Moreover, "[t]he role of the judiciary is not to generate public policy for the state related to automobile liability insurance or to determine the bounds of contractual liberty of insurers. That power rests with the Legislature. Ultimately, '[t]he court's search for the public policy governing automobile insurance policies . . . must begin with the statutes enacted by the legislature.'" *Id.* (citations omitted.) Having examined the pertinent legislation in light of Shelter's "contractual liberty" to define the parameters of its coverage, we find no merit in Plaintiff's assertion that Shelter was mandated to provide coverage for Plaintiff, a guest passenger who was merely occupying the vehicle.

Finally, we point out that panels of both the first and second circuit have reviewed similar policy language and found that it was neither in conflict with pertinent statutory

mandates nor with public policy. *See, e.g., Wines v. Hollingsquest*, 54,605 (La.App. 2 Cir. 7/6/22), 343 So.3d 332, *writ denied*, 22-1193 (La. 11/1/22), 349 So.3d 7; *Nielson v. Shelter Mut. Ins. Co.*, 14-614 (La.App. 1 Cir. 11/7/14), 167 So.3d 697, *writ denied*, 14-2564 (La. 3/13/15), 160 So.3d 964. In both instances, the panels applied the clear policy definitions limiting UM coverage. In *Wines*, 343 So.3d at 340, the second circuit determined that Plaintiff's "statutory and public policy arguments in support of her claim that the Shelter insurance policy provides UM coverage for her as a passenger," were "unfounded." It instead remarked that, "[u]ntil and unless the Louisiana Legislature sees fit to amend the UM statute, we will not usurp its function by doing so as a court." *Id.* (citing *Landry*, 347 So.3d 712). It further noted that although "'automobile liability policies' are issued primarily for the protection of the public rather than the insured, it is not the public policy of this state to protect and provide compensation to injured persons at all times.'" *Id.* (quoting *Taylor v. Rowell*, 98-2865, p. 8 (La. 5/18/99), 736 So.2d 812, 818).

## DECREE

For the foregoing reasons, we grant and make peremptory the writ application filed by Defendant/Relator Shelter Mutual Insurance Company. The ruling of the trial court is reversed, the motion for summary judgment filed by Shelter Mutual Insurance Company is granted, and the claims of Plaintiff/Respondent Stephanie McFarland against Shelter Mutual Insurance Company are dismissed with prejudice. Costs of this writ application are assessed to Ms. McFarland.

**WRIT GRANTED AND MADE PEREMPTORY.**