# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 24-381


**CELESTE REED, MOTHER AND TUTRIX OF A.M.C.**

**VERSUS**

**GEICO CASUALTY COMPANY**


\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 20230065
HONORABLE SCOTT J. PRIVAT, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**WILBUR L. STILES**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Elizabeth A. Pickett, Ledricka J. Thierry, and Wilbur L. Stiles, Judges.


**AFFIRMED.**

**Tracy P. Curtis**
**The Glenn Armentor Law Corp.**
**300 Stewart Street**
**Lafayette, LA 70501**
**(337) 233-1471**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Celeste Reed, mother and tutrix of A.M.C.**

**Steven M. Mauterer**
**Nicholas P. Arnold**
**Blue Williams, LLC**
**3421 N. Causeway Boulevard, Suite 900**
**Metairie, LA 70002**
**(504) 831-4091**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **GEICO Casualty Company**

**STILES, Judge.**

The trial court entered summary judgment in favor of GEICO Casualty Company after determining that the policy it issued to Corey Kothenbeutel did not offer coverage for his permissive use of an automobile that he co-owned with the decedent which was not identified in the subject policy. Plaintiff Celeste Reed appeals. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

Plaintiff filed a Petition for Declaratory Judgment and Damages on behalf of the minor child born to her and to Johnnie Keith Cope. Mr. Cope died from wounds sustained in a January 17, 2022 automobile accident when he was travelling as a passenger in a 2016 Ram 1500 which was co-owned and being driven by Mr. Kothenbeutel. By the petition, Plaintiff pursued a survival action and sought damages associated with wrongful death.

Plaintiff named GEICO Casualty Company as a defendant[1] and alleged that two policies issued by the insurer provided coverage for the identified claims. Plaintiff first identified GEICO policy no. 6009-98-10-66 issued to Mr. Cope and Ms. Reed for the 2016 Ram. Plaintiff alleged that coverage was provided for Mr. Kothenbeutel's permissive use of the 2016 Ram. GEICO does not dispute that the Cope policy provides coverage in that regard.

Rather, the present proceeding involves Plaintiff's attempt to recover secondary coverage under GEICO policy no. 6004-47-96, a policy issued to Mr.

---

[1] Plaintiff named the "estate of Corey Kothenbeutel" as an additional defendant pursuant to La.Code Civ.P. art. 1880 ("When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding.").

Kothenbeutel. The Kothenbeutel policy listed only a 2017 Ram 2500, a vehicle not involved in the fatal accident.

Plaintiff asserted that, although GEICO had "taken the position that its policy written to Kothenbeutel does not apply under these facts[,]" the insurer failed to articulate its "coverage denial position" and to provide supporting documentation. Plaintiff therefore asked the trial court "to declare the rights of the parties relative to" the Kothenbeutel policy and to declare that it provides coverage to Plaintiff for the crash in the 2016 Ram.

In its Answer, GEICO denied coverage under the Kothenbeutel policy and explained that it had received information indicating that Mr. Kothenbeutel was a co-owner of the 2016 Ram "occupied by Cope at the time of the subject accident." The Kothenbeutel policy, however, listed only the 2017 Ram, not the 2016 Ram. GEICO therefore asserted that the 2016 Ram, both "owned" and operated by Mr. Kothenbeutel at the time of accident, did not meet the definition of an "owned auto" under the Kothenbeutel policy. GEICO further maintained that the Kothenbeutel policy did not afford uninsured/underinsured motorist coverage as Mr. Kothenbeutel had rejected that coverage.

GEICO thereafter filed a motion for summary judgment seeking a declaration that the Kothenbeutel policy offers no coverage for Plaintiff's claims. In support of its position that Mr. Kothenbeutel and Mr. Cope co-owned the 2016 Ram, GEICO attached records of the men's purchase of the vehicle and its title history. GEICO also attached the Kothenbeutel policy, for the proposition that, despite his ownership interest in the vehicle, the 2016 Ram was not listed in the policy nor was a premium charged for its coverage.

Plaintiff opposed the motion, asserting that the Kothenbeutel policy extended coverage for his "permissive use" of the vehicle in light of what she maintains was GEICO's inadequate evidence regarding ownership. Plaintiff argued that, rather than ownership, the evidence related only to Mr. Kothenbeutel's involvement in the financing of the vehicle. She further maintained that GEICO's policy otherwise failed to define either "ownership" or "co-ownership[.]" Plaintiff suggested that this failure to define the terms rendered the policy vague and required the court to construe the policy in favor of coverage.

Following oral arguments, the trial court determined that Mr. Kothenbeutel was "half-owner" of the 2016 Ram and, therefore, the Kothenbeutel policy did not apply to the accident. By the resulting May 17, 2024 judgment, the trial court granted GEICO's motion for summary judgment and dismissed Plaintiff's claims with prejudice.

Plaintiff appeals, assigning the following as error:

[1.]    The district court erred in granting Geico's summary judgment: A motion based on the assertion of a lack of coverage under an insurance policy must not be rendered when there is a reasonable interpretation of the policy that affords coverage. And here, mover's policy lacks a definition of ownership relative to its permissive user coverage for a non-owned auto. Utilizing the Civil Law view of ownership that looks beyond mere title to a policy's missing definition of ownership results in the reasonable interpretation that the mere co-signed title to a vehicle does not defeat permissive use coverage.

[2.]    Given that true ownership derives not from a title, but from the right to possess and use of a thing, and because it is only through possession that one can exercise the right of enjoyment, the district court erred in apparently determining that title in one's name alone conveyed ownership sufficient to extend permissive use coverage.

[3.]    Procedurally, an insurance company seeking summary dismissal and seeking to shift the burden of proof, must first illustrate a lack of evidence supporting one of the elements of plaintiff's trial

3

burden of proof, and in this case mover failed to point to any absence of proof thus to the extent the district court found that plaintiff had the burden of proof it erred.

**DISCUSSION**

*Summary Judgment*

Louisiana Code of Civil Procedure Article 966(A)(3) provides that "a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." The burden of proving entitlement to summary judgment rests with the mover. La.Code Civ.P. art. 966(D)(1). If, however, the mover will not bear the burden of proof at trial on the matter at issue, the mover is not required to "negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense." *Id.*

On appeal, a trial court's ruling on a motion for summary judgment is considered on de novo review, with the appellate court using the same criteria that govern the trial court's determination of whether summary judgment is appropriate. *Guidry v. Brookshire Grocery Co.*, 19-1999 (La. 2/26/20), 289 So.3d 1026. The appellate court therefore inquires whether there are any genuine issues of material fact and whether the mover is entitled to judgment as a matter of law. *Higgins v. La. Farm Bureau Cas. Ins. Co.*, 20-1094 (La. 3/24/21), 315 So.3d 838.

*Interpretation of the Insurance Policy*

Interpretation of an insurance policy typically involves a legal question that can be resolved properly by a motion for summary judgment. *Bonin v. Westport Ins. Corp.*, 05-886 (La. 5/17/06), 930 So.2d 906. While it is the burden of a purported insured to prove that an incident falls within a policy's terms, an insurer bears the

burden of proving the applicability of an exclusionary clause within a policy. *Doerr v. Mobil Oil Corp.*, 00-947 (La. 12/19/00), 774 So.2d 119 (citations omitted). "Importantly, when making this determination, any ambiguities within the policy must be construed in favor of the insured to effect, not deny, coverage." *Id.* at 124.

As a contract between the parties, an insurance contract should be construed pursuant to the Civil Code's general rules of interpretation of contracts. *Cadwallader v. Allstate Ins. Co.*, 02-1637 (La. 6/27/03), 848 So.2d 577. Thus, the judiciary's role is to ascertain the common intent of the parties as reflected by the words of the policy. *Id.*; *Peterson v. Schimek*, 98-1712 (La. 3/2/99), 729 So.2d 1024. *See also* La.Civ.Code art. 2045 ("Interpretation of a contract is the determination of the common intent of the parties.") Further, "[t]he rules of construction do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists or the making of a new contract when the terms express with sufficient clearness the parties' intent." *Cadwallader* 848 So.2d at 580. *See also* La.Civ.Code art. 2046 ("When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."); La.Civ.Code art. 2047 (Unless the words of a contract have acquired a technical meaning, they "must be given their generally prevailing meaning.").

*Kothenbeutel Policy*

Turning to de novo consideration of whether the Kothenbeutel policy affords coverage for Mr. Kothenbeutel's use of the 2016 Ram, we point out that both parties' arguments stem from the following portions of Section I of the Kothenbeutel policy.

**SECTION I**

**Liability Coverages Your Protection Against Claims From Others Bodily Injury Liability Property Damage Liability**

**DEFINITIONS**

The words italicized in Section I of this policy are defined below.

. . . .

4. *Insured* means a person or organization described under PERSONS INSURED.

5. *Non-owned auto* means *a private passenger auto, farm auto,* or *utility auto* or *trailer* not owned by or furnished for the regular use of *you* or *your relatives,* except a *temporary substitute auto. You* or *your relatives* must be using the *non-owned auto* or *trailer* with the owner's express or implied permission. A *non-owned auto* rented or leased for more than 30 days will be considered furnished for *your* regular use.

. . . .

6. *Owned auto* means:

    (a) a vehicle described in this policy for which a premium charge is shown for these coverages;

    (b) a *trailer* owned by *you*;

    (c) a *private passenger auto, farm auto* or *utility auto* which *you* obtain ownership of during the policy period or for which *you* enter into a lease for a term of six months or more during the policy period, if

        (i) it replaces an *owned auto* as defined in (a) above; or

        (ii) we insure all *private passenger autos, farm autos* and *utility autos* owned or leased by *you* on the

date of the acquisition, and *you* ask us to add it to the policy no more than 30 days later.

(d)     a *temporary substitute auto*.

. . . .

## LOSSES WE WILL PAY FOR YOU UNDER SECTION I

Under Section I, we will pay damages which an *insured* becomes legally obligated to pay because of:

1.     ***Bodily injury***, sustained by a person, or

2.     Damage to or destruction of property, arising out of the ownership, maintenance or use of the *owned auto* or a *non-owned auto*. We will defend any suit for damages payable under the terms of this policy. We may investigate and settle any claim or suit.

. . . .

## PERSONS INSURED

**Who is Covered**

Section I applies to the following as *insureds* with regard to an *owned auto*:

1.     **you and your relatives**;

2.     any other person using the auto with *your* express or implied permission, and within the scope of that permission.

3.     any other person or organization for his or its liability because of acts or omissions of an *insured* under 1. or 2. above.

Section I applies to the following with regard to a *non-owned auto*:

1.     (a)     **you**;

(b)     *your relatives* when using *a private passenger auto*, *farm auto* or *utility auto* or *trailer*.

Such use by *you* or *your relatives* must be with the express or implied permission of the owner, and within the scope of that permission.

2. a person or organization, not owning or hiring the auto, regarding his or its liability because of acts or omissions of an *insured* under **1.** above.

The limits of liability stated in the declarations are our maximum obligations regardless of the number of *insureds* involved in the occurrence.

As GEICO notes, the Kothenbeutel policy describes only a 2017 Ram. The policy neither describes the 2016 Ram nor does it indicate that GEICO charged or collected premiums for coverage of the vehicle. Obviously, the 2016 Ram is not a "trailer," and, moreover, Mr. Kothenbeutel did not "obtain ownership" of the 2016 Ram "during the policy period[.]" This latter point is demonstrated by reference to the Bill of Sale which indicates that Mr. Cope and Mr. Kothenbeutel purchased the 2016 Ram on June 18, 2021, almost six months *before* GEICO issued the Kothenbeutel policy on December 6, 2021.[2] The Registration issued for the 2016 Ram by the Louisiana Department of Public Safety and Corrections, Office of Motor Vehicles lists June 18, 2021, as the "Date Acquired" and reports the "Owner's Name" as "Corey Scott Kothenbeutel and Johnnie Keith Cope." We therefore find merit in GEICO's position that the 2016 Ram does not qualify as an "owned auto." Chiefly, the Kothenbeutel policy neither describes the auto nor indicates that a premium was charged/collected for the vehicle.

GEICO's evidence similarly demonstrates that the 2016 Ram does not alternatively qualify as a "non-owned auto" under the terms of the policy so as to allow for coverage for Mr. Kothenbeutel's permissive use thereof. GEICO submitted the Office of Motor Vehicle Title History records which, in addition to the Registration (listing the "Owner's Name" as "Corey Scott Kothenbeutel and Johnnie

---

[2] The June 18, 2021 Bill of Sale for the 2016 Ram lists "Corey Scott Kothenbeutel" as the "Buyer" and "Johnnie Keith Cope" as the "Co-Buyer."

Keith Cope"), include the Vehicle Application (listing the "Name of Owner" as "Corey Scott Kothenbeutel" and the "Name of Joint Owner" as "Johnnie Keith Cope"). GEICO also documented the purchase of the 2016 Ram, introducing the June 18, 2021 "Bill of Sale" from Don's Automotive Group (providing "Buyer's Information" for Mr. Kothenbeutel and "Co-Buyer's Information" for Mr. Cope); the associated "Power of Attorney for Transfer of Ownership to a Motor Vehicle" (listing both men as the "transferee"); and the "Retail Sale Contract – Simple Charge" for the 2016 Ram (listing Mr. Kothenbeutel as the "Buyer" and Mr. Cope as the "Co-Buyer"). Each of the sales documents reflects the Duson address listed on the Kothenbeutel policy rather than the Lafayette address listed on the Cope policy.

All indicia point to the fact that Mr. Kothenbeutel, along with Mr. Cope, purchased and thereafter owned the 2016 Ram. Further, there is no indication that the 2016 Ram was "furnished" for Mr. Kothenbeutel's "regular use." And, in fact, Plaintiff concedes in her brief that "[t]he sole evidence of Mr. Kothenbeutel's ever having used Cope's truck is the crash from which this case stems[.]" That single use, she acknowledges, does not indicate regular use. Accordingly, the 2016 Ram does not qualify as a "non-owned auto" under the terms of the policy.

While Plaintiff argues that GEICO's evidence relates only to "title," not to "ownership," we again find no merit in that position. The evidence reflects both that Mr. Kothenbeutel had financial responsibility for the vehicle and was co-owner in title. Noting that the GEICO policy does not specifically define "ownership," Plaintiff suggests that Civil Code principles surrounding "ownership" call for proof of acts indicating that Mr. Kothenbeutel had possession and enjoyment of the 2016 Ram. In support of her position, Plaintiff cites, in part, La.Civ.Code art. 477 which

9

provides that "[o]wnership is the right that confers on a person direct, immediate, and exclusive authority over a thing. The owner of a thing may use, enjoy, and dispose of it within the limits and under the conditions established by law."

We point out that La.Civ.Code art. 477 only provides that an "owner" *may* use, enjoy, and dispose of the thing. It does not demand that the owner exercise the rights of ownership. Instead, La.Civ.Code art. 481 distinctly negates the argument that proof of possession was required as it provides, in part, that "[t]he ownership and the possession of a thing are distinct. Ownership exists independently of any exercise of it and may not be lost by nonuse."

Thus, Plaintiff's contention that the fact that the policies indicate the 2016 Ram was "garaged in Lafayette" at Mr. Cope's residence rather than at Mr. Kothenbeutel's residence is immaterial to the issue of ownership in this instance.[3] Instead, as "co-owners," Mr. Kothenbeutel and Mr. Cope owned the 2016 Ram "in indivision, each having an undivided share." La.Civ.Code art. 480 (providing that "[t]wo or more persons may own the same thing in indivision, each having an undivided share.").

This court has previously addressed "co-ownership" within the context of a liability policy that contained an exclusionary clause indicating that the "insurance does not apply . . . to bodily injury sustained while occupying a highway vehicle owned by any insured." *Ray v. Republic Vanguard Ins. Co.*, 503 So.2d 217, 218 (La.App. 3 Cir. 1987). In *Ray*, Mr. and Mrs. Ray owned a Ford pickup truck and a Peterbilt 18-wheeler. The vehicles were community property, but the title to the Ford

---

[3] Although the Kothenbeutel policy was issued to Mr. Kothenbeutel's Duson address and Mr. Cope's policy was issued to his Lafayette address, the sales and registration materials related to the 2016 Ram list Mr. Kothenbeutel's Duson address.

was in Mrs. Ray's name, and the Peterbilt was titled to Mr. Ray. After Mr. Ray sustained injury in an accident involving the Peterbilt, Mr. and Mrs. Ray sought recovery under the medical pay provision of the Republic Vanguard Insurance Company policy issued to Mrs. Ray for the Ford.

Although it was undisputed that Mr. Ray was an omnibus insured under the policy, Republic refused coverage, relying on the exclusion for bodily injury sustained while occupying a vehicle "*owned* by any insured[.]" *Id.* (Emphasis added.) The trial court concluded that the exclusionary clause was ambiguous as it applied only to vehicles "owned" by the insured, Mrs. Ray, yet the couple "co-owned" the Peterbilt. This court reversed the trial court's ruling, explaining that, although it is well settled that an ambiguity in an insurance contract should be construed in favor of the insured, "[t]he court … will not supply the ambiguity, or allow recovery 'under the pretext of interpreting an ambiguity where none exists.'" *Id.* (quoting *Morrison on Behalf of Morrison v. Miller*, 452 So.3d 390, 392 (La.1984)).

The panel explained further that:

> The rule of interpretation of words and phrases which favor the insured is inapplicable if dependent on strained constructions. *Leonard, Tutrix of Bland v. Continental Assurance Company, et al.* 457 So.2d 751 (La.App. 1st Cir. 1984, writ denied), quoting from *Authement v. Security Industrial Insurance Company of Donaldsonville* 401 So.2d 402 (La.App. 1st Cir.1981) as follows []:
>
>> " . . . while exclusions, if ambiguous, will be construed so as to provide coverage, tortured constructions which seize on every word as a possible source of confusion will be dismissed as mere sophistry."
>
> Herein, the word purporting to create the ambiguity is the verb "owned". According to the argument contained in the brief of counsel for appellees, they contend that Mrs. Ray merely co-owned the vehicle involved in the accident, and that the exclusionary clause should not preclude recovery. Following the appellee's reasoning, it would be

11

necessary to show that Mrs. Ray had full ownership of the 18 wheeler for the exclusion to be applicable. This reasoning, however, is flawed. It creates a potentially inequitable result by permitting Mrs. Ray insurance as the "owner" of the pickup truck, while at the same time, disallowing the efficacy of the exclusionary clause because Mrs. Ray is not the sole "owner".

Another implausible result of this theory, if sustained, would be to allow a couple who owned, say, four vehicles, to take out insurance with medical pay provisions on one of them only, but enjoy medical pay coverage as to the other three, without paying premiums on the latter.

Words and phrases used in a contract of insurance are to be construed and interpreted in their ordinary and popular sense, rather than a limited, philosophical, or technical sense. *Thomas v. Protective Life Insurance Company* 319 So.2d 878 (La.App. 3rd Cir.1975).

We find no ambiguity in the exclusionary clause. Just as the whole is the equal to the sum of its parts, so should ownership embrace or include co-ownership, within the meaning of the exclusion.

*Ray*, 503 So.2d at 218-19.

Many of the considerations discussed in *Ray* are present in this case. Mr. Kothenbeutel's policy plainly listed the requirements for coverage of an "owned auto" and a "non-owned auto." GEICO has presented evidence that Mr. Kothenbeutel "co-owned" the 2016 Ram but that the requirements for coverage of either an "owned auto" or a "non-owned auto" were not otherwise met. Again, the 2016 Ram is not insured as an "owned auto" as the Kothenbeutel policy does not describe the 2016 Ram and does not reflect a premium charge for the vehicle. And, given proof of co-ownership, the 2016 Ram may not be considered a "non-owned auto," a qualification that could have allowed for coverage of Mr. Kothenbeutel's permissive use of the 2016 Ram.[4]

---

[4] The policy provides that Section I applies to the insured when using a "non-owned auto" if "[s]uch use" by the insured is "with the express or implied permission of the owner, and within the scope of that permission."

Finally, we are not persuaded by Plaintiff's contention that because Mr. Cope paid a premium for coverage of the 2016 Ram under his own policy, GEICO did not demonstrate that it was adversely affected by Mr. Kothenbeutel's failure to list the 2016 Ram in his own policy and to pay a premium for coverage. This consideration is irrelevant as the policy defines an "owned auto" as one "described in *this* policy for which a premium charge is shown for these coverages[.]" (Emphasis added.) The language is clear, unambiguous, and expressive of the intent of the parties; the policy must therefore be enforced as written. *See Reynolds v. Select Props., Ltd.*, 93-1480 (La. 4/11/94), 634 So.2d 1180.

We maintain summary judgment in favor of GEICO.

### DECREE

For the foregoing reasons, the judgment of the trial court entering summary judgment in favor of GEICO Casualty Company is affirmed. Costs of this proceeding are assessed to Plaintiff/Appellant, Celeste Reed.

**AFFIRMED.**